Lawrence SANDLIN, Appellant (Claimant below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, J. Frank Hanley, II, and Ralph F. Miles, as members of and constituting a quorum of the Review Board of the Indiana Employment Security Division, Appellee,

Central Avenue United Methodist Church, Appellee (Employer below).

No. 2–377A105.

Court of Appeals of Indiana, Fourth District.

June 30, 1980.

David F. Shadel and L. Peter Iverson, Legal Services Organization of Ind., Inc., Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Darrel K. Diamond, Asst. Atty. Gen., Indianapolis, for appellee.

CHIPMAN, Judge.

This is an appeal from a decision of the Review Board of the Indiana Employment Security Division denying benefits to the claimant-appellant Lawrence Sandlin upon a finding that he voluntarily left work without good cause. On appeal, Sandlin presents the following questions for our review:

1) Was Sandlin denied procedural due process by not being advised that he had a right to appear by counsel at the referee's hearing, and

2) Did the hearing referee fulfill his statutory duty to fully and fairly develop the facts relevant to Sandlin's claim?

Because of our resolution of the first issue, we find it unnecessary to address the second.

Reversed and remanded.

1. In response to a certified question directed to the Board, Mr. William H. Skinner, Chairman, states, "the forms, notices, and other docu-

Lawrence Sandlin was employed by the Central Avenue United Methodist Church as a janitor from February 25, 1976, through August 11, 1976. On his last day of employment, he had an argument with his supervisor, Steve Disseler, sometime between 8:00 a. m. and 10:00 a. m. Sandlin asked Disseler whether he could have the rest of the day off to go with the church's senior citizens group on an outing to the Marion County Fair. Disseler advised Sandlin that he could not have the day off because there was work to be done around the church. According to Disseler, Sandlin became belligerent, threw his church keys on a table, and told Disseler he would not work. Disseler then told Sandlin that if he would only do some work, perhaps he could leave early at 11:30 a. m. or 12:00 noon. Disseler next saw Sandlin at approximately 11:05 a. m., apparently waiting on a corner for a bus. He disappeared shortly thereafter. Whether Sandlin did any work around the church before he left was never established.

This case presents the question whether due process requires the Indiana Employment Security Division to inform an unemployment compensation claimant that he may be represented by counsel during the administrative evidentiary hearing. Nothing in the record shows appellant Sandlin was so advised prior to the hearing before the appeals referee.[1] Towards the end of the hearing, the referee discovered that Sandlin could not read and had only progressed in school to the seventh grade. Moments later, the following exchange took place:

"REFEREE: Alright I'm going to tell you something that I think you should have brought this to my attention at the beginning of this hearing if you have trouble reading. I think you've waived the right to a lawyer by going ahead here today, but in the event this decision goes against you, you have a right of appeal. If this decision goes against you and you want to appeal it I

ments given or sent to the appellant did not contain any information regarding any right to counsel at the hearing before the referee."

would suggest you go either to Legal Aide Society for free legal help, or the Legal Services Organization. Anybody that's in any of these claims and cannot read, you're under a severe disadvantage. I think since you didn't bring it up and it was the employer's testimony that you waived the right to that at this hearing, so I'm going to go ahead and decide the case on what I've heard today. In the event this is appealed all of this testimony is reduced to writing. If you can't read you'd be under severe disadvantage. Do you have anything else you want to say?

MR. SANDLIN: No uh I can read the writing a little bit but I can't see it.

REFEREE: Well if you can't see it it's just as bad as not being able to read isn't it?

MR. SANDLIN: That's right. I needed glasses all my life. I needed glasses when I was six years old when I first started to school.

REFEREE: Alright I'm going to show the hearing adjourned. The claimant and the employer will each receive a copy of the written determination in the mail in about two weeks. Thank you all for coming in.

The Fourteenth Amendment to the United States Constitution prohibits any State from depriving a person of property without due process of law. Our U. S. Supreme Court has rejected the distinction between "rights" and "privileges" in considering the applicability of procedural due process requirements, *Board of Regents v. Roth* (1972) 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, recognizing that "property interests" which are protected by due process safeguards take many forms, including an individual's legitimate claim to various forms of public assistance. *See Mathews v. Eldridge* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, (social security disability benefits); *Goldberg v. Kelly* (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, (welfare benefits). Our courts have specifically recognized the applicability of procedural due process in proceedings before the Indiana Employment Security Division to establish eligibility for unemployment compensation benefits. *Wilson v. Review Board* (1979) Ind., 385 N.E.2d 438; *Hamm v. Review Board* (1961) 132 Ind.App. 318, 177 N.E.2d 337. *See Addison v. Review Board* (1979) Ind.App., 397 N.E.2d 1037.

The U. S. Supreme Court has repeatedly held due process to be a term which "negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers v. McElroy* (1961) 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230. Instead, what essentially is involved is a balancing of interests. In *Cafeteria Workers, supra,* Justice Stewart wrote:

> "As these and other cases make clear, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action."

367 U.S. at 895, 81 S.Ct. at 1748, 1749.

Two cases decided by the Supreme Court during the 1970's, *Goldberg v. Kelly, supra,* and *Mathews v. Eldridge, supra,* illustrate this balancing of individual and governmental interests in arriving at a determination as to whether certain administrative procedures are constitutionally adequate.

The plaintiffs in *Goldberg* were New York residents receiving financial aid under the federally assisted program of Aid to Families with Dependent Children (AFDC) and under New York State's general Home Relief Program. The issue which faced the court was whether a state that terminated public assistance to a particular recipient without affording him an evidentiary hearing prior to termination denied the recipient procedural due process in violation of the Fourteenth Amendment. Holding a pretermination evidentiary hearing was constitutionally required, the court emphasized that "[f]or qualified recipients, welfare provides the means to obtain essential food, clothing, housing and medical care." 397 U.S. at 264, 90 S.Ct. at 1018. The Court

weighed the interests of eligible recipients in uninterrupted welfare benefits against what the State argued to be the substantial burden on fiscal and administrative resources which would result if pre-termination hearings were required.[2] Justice Brennan wrote:

> "[T]he interest of the eligible recipient in uninterrupted receipt of public assistance . . . clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens."

397 U.S. at 266, 90 S.Ct. at 1019. The court reasoned that an evidentiary hearing was the best way—indeed, the only constitutionally permissive way—to insure benefits would not be erroneously withheld from a qualified recipient.

In *Mathews v. Eldridge, supra,* the court was faced with a similar question, i. e., whether due process required an evidentiary hearing before Social Security disability benefits could be terminated. Distinguishing *Goldberg,* the court held a pre-termination hearing was not required, prefacing a discussion of the constitutional issue with the following observation:

> "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See, e. g., Goldberg v. Kelly, supra,* 397 U.S., at 263–271, 90 S.Ct., at 1018–1022."

424 U.S. at 335, 96 S.Ct. at 903. The court reasoned that unlike the welfare benefits in *Goldberg,* disability benefits, while certainly not unimportant, were not based upon financial need.[3] Furthermore, a pre-termination evidentiary hearing was not as critical in a situation where the decision to discontinue disability benefits in most cases turned on what the court characterized as "routine, standard, and unbiased medical reports." 424 U.S., at 344, 96 S.Ct., at 907. Finally, the court acknowledged the substantial costs and administrative burden associated with requiring an evidentiary hearing prior to termination of benefits:

> "At some point the benefits of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost."

424 U.S., at 348, 96 S.Ct., at 909.

The real significance of the *Goldberg, supra,* and *Mathews, supra,* decisions, at least for our purposes, lies not in what the court had to say about pre-termination hearings. Most important is what the court had to say about how questions of administrative due process are to be analyzed and ultimately resolved. *Mathews* explicitly prescribes the factors we must consider in determining whether any given administrative procedure meets the due process requirements of the Fourteenth Amendment: the interest of the individual, the nature and effectiveness of the procedure in question, and the interests of the government. *Accord, Wilson v. Review Board, supra.*

In the present case, appellant Sandlin argues he was denied due process when the agency failed to inform him of his right to be represented by counsel before the hearing referee. The Review Board argues it had no such obligation. After considering

---

2. Commissioner Goldberg argued that summary adjudications protected the public fisc by stopping payments promptly upon discovery of a reason to believe that a recipient was no longer eligible. Goldberg also argued that since most terminations were accepted without challenge, summary adjudications also con- served both the fisc and administrative time and energy by reducing the number of evidentiary hearings actually held.

3. The court reasoned that the benefits were unrelated to the worker's income or support from many other sources.

the interests of appellant Sandlin and other claimants similarly situated, the nature of the procedure in question, and the interests of the State, we conclude Sandlin did have a due process right to an administrative procedure reasonably calculated to inform him of his right to be represented by counsel at the referee's evidentiary hearing.

Our legislature has recognized, "[e]conomic insecurity due to unemployment . . . to be a serious menace to the health, morale and welfare of the people of this State . . . ." Ind.Code 22–4–1–1. Indeed, during periods of economic hardship, unemployment compensation may provide an individual or a family with the means to purchase essentials such as food and housing. Suffice it to say that a qualified claimant's interest in unemployment compensation benefits is substantial.

■ Whether a claimant will be denied benefits for having either left work voluntarily without good cause or having been discharged for just cause will depend upon findings of fact made by the referee following an evidentiary hearing. Due process requires the claimant have this opportunity to be heard. Due process also requires the claimant be entitled to appear by counsel during the administrative hearing. As Justice Brennan wrote in *Goldberg v. Kelly, supra* :

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. [citations omitted] We do not say that counsel must be provided at the pre-termination hearing, but only that a recipient *must* be allowed to retain an attorney if he so desires. Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-

examination, and generally safeguard the interests of the recipient." (emphasis added)

397 U.S., at 270, 271, 90 S.Ct., at 1022.

In *Hamm v. Review Board, supra*, this court held:

"We do not deem it necessary to cite authority that the due process of law provisions of both constitutions apply equally to administrative boards, and that the appellant herein had a right to be represented by counsel in this matter before the appeals referee, and at every other stage of the proceedings."

177 N.E.2d at 338.

■ What then are the legitimate interests of the State in making no attempt to inform a claimant of his Fourteenth Amendment due process right to appear by counsel during the administrative proceedings in question? Many forms and notices are already supplied to a claimant involved in the administrative process, including a notice of the evidentiary hearing before the referee. These forms and notices could easily include a statement telling the claimant of his right to appear by counsel. This simple method of informing a claimant of his due process right could be accomplished at little expense. We are not saying it would be necessary for the Board to inform the claimant of his right to counsel on the record at the referee's hearing, at a time when the information would be least helpful and may perhaps lead to a disruptive delay in the proceedings. *See Walker v. Review Board of the Indiana Employment Security Division*, 404 N.E.2d 1363 (Ind. App.1980). Including the information in a written notice prior to the referee's hearing would allow claimant time to consult with an attorney if he chooses to do so.[4]

4. With written notice in hand, it then becomes the responsibility of the claimant to apprise himself of its contents. For instance, in *Neal v. Review Board* (1972) 153 Ind.App. 630, 288 N.E.2d 561, the Second District, in a per curiam opinion, wrote:

"Appellant attempts to assign as error that because she is not educated, having only progressed to the fifth grade of school, and cannot read, the standard form, printed notice

which appears in the decision of the Appeals referee did not constitute proper notice to her of her right to appeal, that she did not voluntarily waive her right to appeal, that she has been denied of her right to appeal, and thereby deprived of her right to appeal, and thereby deprived of equal protection and due process of law.

The appellant does not claim that she did not receive the notice. She claims the notice sent to her was not sufficient to advise her of

Indeed we agree with the appellant that a right to counsel, as with any other right, is a "non-right" to a person who is ignorant of the matter. Query whether the Board could, consistent with due process, simply choose not to inform a claimant that he has a right to judicial review of administrative action—a right which our Indiana Supreme Court has held to be of constitutional dimension. *Warren v. Indiana Telephone Co.* (1940) 217 Ind. 93, 26 N.E.2d 399.

In short, due process in this case requires an administrative procedure reasonably calculated to inform a claimant of his right to appear by counsel. In *Caldwell v. Laupheimer*, 311 F.Supp. 853 (E.D.Pa.1969), Judge Aldisert, presently of the Third Circuit U. S. Court of Appeals, pronounced what he believed to be "at least the minimal incidents of due process" in a hearing to determine eligibility for public welfare benefits:

> "[N]otice must be both timely and adequate, given within a reasonable time prior to the taking of any action, and specifying the proposed action and grounds therefor, indicating the information needed to determine eligibility, *and advising the recipient of the right to be heard and to be represented by counsel.*" (emphasis added)

311 F.Supp., at 856. *Accord, Sims v. Juras*, 313 F.Supp. 1212 (D.Or.1969). While the agency is free to adopt those procedures it deems appropriate, at least a written notice to the claimant is required. A weighing of the interests involved in this case compels this result.

We are also reminded that a procedure embodying due process is essential not only to the legal validity of the administrative action, but also to the maintenance of public confidence in the value and fairness of the governmental activity. *Morgan v.*

*United States* (1938) 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129. After a review of the transcript of the referee's hearing, it is evident that Sandlin's presentation of his case was anemic; there is no doubt that an attorney could have better represented his interests. Accordingly, this matter is remanded to the Board with instructions the claimant be advised of his right to be represented by counsel and be given a new evidentiary hearing before the agency.

Reversed and remanded.

MILLER, P. J., and YOUNG, J., concur.

---

her rights because she could not read it. If she could not read it herself, she had an affirmative duty to act in some manner to inform herself of its contents. By failing to inform herself of the contents of the notice, and failing to avail herself of the right to appeal within the time permitted by statute and set out in the notice, appellant failed to invoke the jurisdiction of the Review Board, and subsequently of this Court. While the application of this rule may seem to create a harsh result in this case because of appellant's particular circumstance, had she acted promptly to inform herself there would be no reason for the application of the rule."
288 N.E.2d at 563, 564.