Jacqueline S. BERZINS, Appellant (Defendant Below),

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams, and Paul M. Huston, as Members of and constituting the Indiana Employment Security Division, and Americana Healthcare, Appellee (Plaintiff Below).

No. 2–681A200.

Court of Appeals of Indiana, Second District.

Nov. 16, 1981.
Rehearing Denied Jan. 18, 1982.

Clifford & Gotshall, William R. Clifford, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Jacqueline S. Berzins (Berzins) appeals from the denial of unemployment benefits by the Review Board of the Indiana Employment Security Division (Board), claiming we must reverse the Board because (1) she was not advised of the right to be represented by counsel; (2) the findings were unsupported by the evidence, as the conclusion was unsupported by the findings; and (3) the Board failed to review the evidence heard by the Appeals Referee.

We affirm.

## FACTS

Berzins was denied unemployment benefits because she had voluntarily left her employment at Americana Healthcare without good cause. The facts which we may consider that led to this denial of benefits have been summarized by an Appeals Referee:

SUMMARY OF CASE: This is the claimant's appeal from a deputy's determination dated March 17, 1981, finding that the claimant voluntarily left employment without good cause in connection with the work. A hearing was held at Indianapolis, Indiana, on April 14, 1981. The claimant appeared in person. The employer was present and represented by Gerald McGowan, Administrator.

FINDINGS OF FACT: The claimant was employed by this employer from April 7, 1980, through February 12, 1981. The claimant was employed as housekeeping supervisor. The claimant was earning $4.70 per hour. The claimant worked 40 hours per week on the 7:00 a.m. until 3:00 p. m. shift. The claimant was asked by the administrator for her resignation. The claimant complied. The claimant was to be allowed to continue working for this employer until she secured other employment. The administrator had asked for the claimant's resignation due to a communications problem that had developed between the claimant and a maintenance supervisor. The claimant had been given 30 days to correct the situation. The situation did improve immediately after this. However, at approximately the end of the 30 day period, the situation had reoccurred and the administrator asked for the claimant's resignation. The communication problem between the claimant and the cosupervisor apparently stemmed from a personal situation between the two which was not connected with the employment. The claimant's resignation was to be effective on March 16, 1981, assuming she had found other work. The claimant's last day of work for this employer was February 21, 1981. The claimant indicates that due to perceived pressure and harassment, she did not believe she could continue in this employment. The claimant failed to return to this employment and did not notify the employer of her intent. The claimant was considered a satisfactory worker.

CONCLUSIONS OF LAW: I find that the claimant voluntarily left employment without good cause in connection with the work. The separation is attributable to the claimant due to the fact that she would have been able to continue in employment until she found other suitable work. The claimant elected to terminate her employment despite the fact that work remained available for her. The parties agreed that the claimant was asked to resign. The employer indicates

that the decision to terminate the claimant, had she refused to resign, had not been made. Based upon the evidence of record, I find the claimant voluntarily left employment and that the separation is not attributable to the employer. The evidence of record fails to establish that any term or condition of claimant's employment was violated by the employer. The evidence does establish that the claimant left available work due to a problem she was experiencing with a coworker.

DECISION: The deputy's determination dated March 17, 1981, is hereby affirmed.

Also apparent from the record was that Berzins was not represented by counsel or advised of her right to be represented by counsel.

■ The Board having affirmed the denial of benefits, Berzins raises two issues [1] for our consideration:

## ISSUES

1. Was she denied due process by the Appeals Referee's failure to advise her of the right to be represented by counsel?

2. Were the findings supported by the evidence and was the conclusion supported by the findings?

The Board's contention that issue one has been waived because Berzins only alleged in her assignment of errors that the Board's decision is contrary to law, is a will-o-the-wisp. " '[A]ll possible errors arguable before this court are necessarily embraced within the assignment that the award or decision is contrary to law, no other specifications are necessary or contemplated for the purpose of vesting review jurisdiction.' " *Sotak v. Review Board of the Indiana Employment Security Division*, (1981) Ind.App., 422 N.E.2d 445, 447 (quoting *McKinley v. Review Board of the Indiana Employment Security Division*, (1972) 152 Ind.App. 269, 272, 283 N.E.2d 395, 396, *trans. denied* 1973).

## PROLOGUE

The interesting question posed by this case is whether there is a duty to advise a claimant of his or her right to be represented by counsel at the hearing determining eligibility for unemployment benefits. Berzins directs us to no Indiana Supreme Court cases nor any federal or state (other than Indiana) court cases unequivocally holding that there is such a duty. We conclude that there is no denial of due process if, as here, the case is developed by the Appeals Referee as required by regulation.

Three Districts of this Court have reached differing results on this subject:

*District One*—An Appeals Referee has a duty to advise, but any failure to advise is harmless error if the Referee fulfills his duty, imposed by regulation, to develop the claimant's case for him.

*District Three*—The Referee has no duty to advise of the right to be represented by counsel.

*District Four*—The Referee must advise of the duty and failure to do so can never be harmless error.

ISSUE ONE—Counsel—Was Berzins denied due process by the Appeals Referee's failure to advise her of the right to be represented by counsel?

PARTIES' CONTENTIONS—Berzins sees a denial of due process in that she was not advised of the right to be represented by counsel at the hearing. Reversal must necessarily follow, she says, without a showing of prejudice, and specifically cites cases of the Fourth District of this Court so holding. *Infra.* And she further claims she has demonstrated prejudice in any event.

The Board responds that no prejudice has been demonstrated.

CONCLUSION—The Appeals Referee fulfilled his duty to develop Berzins' claim for her; therefore, no denial of due process occurred.

1. A third issue has been waived. Berzins claims this Court must assume the Board failed to review the Appeals Referee's decision because only a cassette, not a transcription, of the hearing was available at the time of the Board's decision. Absolutely no authority is cited for the argument, so it is waived. Ind. Rules of Procedure Appellate Rule 8.3(A)(7).

■ Undoubtedly unemployment benefits are a constitutionally protected property interest which may be affected only by observing the essentials of due process. But due process is not an inflexible concept requiring identical procedural safeguards in all circumstances. The requirements vary according to time, place, and circumstance. *Wilson v. Review Board of the Indiana Employment Security Division,* (1979) Ind., 385 N.E.2d 438, 443–44 (citing *Mathews v. Eldridge,* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Cafeteria Workers v. McElroy,* (1961) 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230).

■ Determining the specific requirements of due process for a given factual situation necessitates the balancing of three factors:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards, and; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* at 424 U.S. 335, 96 S.Ct. 903, 47 L.Ed.2d 33.

*Wilson, supra* 385 N.E.2d at 444. As we shall see, courts have disagreed when applying these guidelines to a hearing before an Appeals Referee.

### A. *Right To Counsel*

■ A claimant unquestionably has the right *upon request* to be represented by counsel. *Hamm v. Review Board of the Indiana Employment Security Division,* (1961) 132 Ind.App. 318, 177 N.E.2d 337. But that is not to say there is a right to be provided with counsel. *Goldberg v. Kelly,* (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

The Indiana Supreme Court has not yet spoken as to whether the Appeals Referee has a duty to advise a claimant of the right to be represented by counsel. The First and Fourth Districts of this Court seem to agree that the Appeals Referee has the duty to advise an unemployment benefits claimant of the right to be represented by counsel. *Sotak v. Review Board of the Indiana Employment Security Division, supra* (First); *Leon-Roche v. Review Board of the Indiana Employment Security Division,* (1981) Ind.App., 419 N.E.2d 801 (Fourth); *Felders v. Review Board of the Indiana Employment Security Division,* (1981) Ind. App., 419 N.E.2d 190 (First); *Foster v. Review Board of the Indiana Employment Security Division,* (1980) Ind.App., 413 N.E.2d 618 (First); *Sandlin v. Review Board of the Indiana Employment Security Division,* (1980) Ind.App., 406 N.E.2d 328 (Fourth). The Third District, on the other hand, does not see the failure to advise as a denial of due process, at least when the *opportunity* to be represented by counsel is not denied. *See Russell v. Review Board of the Indiana Employment Security Division,* (1981) Ind. App., 415 N.E.2d 774; *Walker v. Review Board of the Indiana Employment Security Division,* (1980) Ind.App., 404 N.E.2d 1363.

Other than these Indiana cases from the First and Fourth Districts, Berzins cites us to no case nor do we know of any case in which it has been held that a claimant seeking *unemployment benefits* must be advised of the right to counsel.

The seminal Indiana case is *Sandlin v. Review Board of the Indiana Employment Security Division, supra,* in which the Fourth District first announced this right under Indiana law, relying solely on the authority of *Caldwell v. Laupheimer,* (E.D. Pa.1969) 311 F.Supp. 853, and *Sims v. Juras,* (D.Or.1969) 313 F.Supp. 1212.

The *Caldwell* and *Sims* opinions seem to be dubious precedents upon which to base due process rights for unemployment claimants. Both of these cases dealt with *welfare claimants*—a significant distinction.

■ The "private interest which will be affected" by denial of unemployment benefits, *Wilson, supra,* cannot be equated with a denial of welfare benefits. As is true with social security benefits, the unavailability of unemployment benefits may place

a worker or family below the subsistence level. If the denial of these benefits places the worker below the subsistence level, however, other forms of government assistance, such as welfare, are still available. So the private interest in unemployment benefits and social security benefits is not considered to be as great as the interest in welfare benefits. *Gary v. Nichols*, (D. Idaho 1978) 447 F.Supp. 320; *Ross v. Horn*, (3d Cir. 1979) 598 F.2d 1312, *cert. denied*, (1980) 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136; *see Mathews v. Eldridge*, (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

This is how the law has developed. So it is said that hearing officers for social security claims have no duty to advise claimants of the right to be represented by counsel. *Smith v. Secretary of Health, Education and Welfare*, (7th Cir. 1978) 587 F.2d 857; *Granger v. Finch*, (7th Cir. 1970) 425 F.2d 206; *Reed v. Califano* (E.D.Tenn.1980) 489 F.Supp. 1026. *Contra, Brooks v. Califano*, (D.Del.1977) 440 F.Supp. 1341 (but refusing to order a remand without clear showing of prejudice); *Capek v. Blum*, (1980) 76 A.D.2d 924, 429 N.Y.S.2d 265 (relying on New York authority). The effect of these cases is to militate against the right to counsel in unemployment compensation cases. We know of no Court in any state, other than Indiana, which has explicitly held there is such a duty to advise in unemployment proceedings.

### B. *Effect Of Failure To Advise*

██ The First District has taken the position that, although there is a duty to advise of the right to be represented by counsel, the Appeals Referee's failure to so advise a claimant may in some circumstances not be such a serious procedural defect as to be a denial of due process. Specifically, if the Appeals Referee develops the case on a claimant's behalf who is not represented by counsel, due process has not been denied. The First District's reasoning is based in some measure at least on Ind.Admin.Rules and Regs. (22–4–17–3, in part) which imposes an affirmative duty on the Referee to examine witnesses so as to assure complete presentation of the case:

Where either party fails to appear or where either party is not represented by an attorney or duly authorized agent, it shall be the duty of the referee to examine such party's witnesses, and to cross-examine all witnesses of the other party, in order to insure complete presentation of the case.

If the Referee complies with the regulation by protecting the claimant's interest, no harm occurs necessitating reversal. *Sotak v. Review Board of the Indiana Employment Security Division, supra; Felders v. Review Board of the Indiana Employment Security Division, supra.*

Reversal is not required if no harm occurs because the error is harmless. The harmless error doctrine is embodied in Ind.Rules of Procedure, Appellate Rule 15(E), which prohibits courts from reversing judgments when "the merits of the case have been fairly tried and determined in the court below." This prohibition has been extended to employment security by the language of IC § 22–4–17–12, which says "that claimants may appeal to the Court of Appeals under the same terms and conditions as govern appeals in ordinary civil actions," and the statute has been held to include the harmless error doctrine. *Department of Financial Institutions v. Colonial Bank and Trust Company*, (1978) Ind.App., 375 N.E.2d 285, *cert. denied* (1979) 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75; *Ogilvie v. Review Board of the Indiana Employment Security Division*, (1962) 133 Ind.App. 664, 184 N.E.2d 817.

The Fourth District, on the other hand, takes the view that the failure to advise is such an egregious error that it can never be harmless, *Leon-Roche, supra*, relying on *Doe v. Hampton*, (D.C.Cir.1977) 566 F.2d 265. In *Doe*, the Court of Appeals for the District of Columbia warned that courts should be

cautious in applying the doctrine of harmless administrative error when basic procedural rights have been implicated. *See Yiu Fong Cheung v. Immigration and Naturalization Service*, 135 U.S.App.D.C. 244, 248, 418 F.2d 460, 464 (1969) (refusal

to apply doctrine, though deportability clear, in face of extensive violations of agency deportation regulations promulgated for obvious benefit of prospective deportees).

*Id.* at 277 n. 29.

*Yiu Fong Cheung,* the case cited in *Doe,* does not stand for an automatic reversal rule. Notwithstanding some apparently intractible language, the court in *Yiu Fong Cheung* closed with words indicating a more supple concept:

> And in some other case *a court might well invoke the doctrine of harmless error* to avoid reversal. *But this particular case involves neither a long hearing completed nor a long rehearing on remand.* We think it in the interest of justice to vacate the deportation order and remand for further proceedings . . . .

418 F.2d at 465. Berzins' hearing was far from summary.

As we read the cases cited by the Fourth District, reversal is not required automatically if the hearing was conducted in a manner which protected the claimant's interests. Except for the Fourth District cases, neither have we been cited to nor have we found any case in which it is held that a denial of due process automatically results if an unemployment benefits claimant is not advised of the right to be represented by counsel.

To the contrary, several cases in similar areas of the law (social security, deportation) indicate that the doctrine of harmless error would be available to cure any such alleged procedural defect if the hearing officer develops the claimant's case. *Marsh v. Harris,* (4th Cir. 1980) 632 F.2d 296; *Livingston v. Califano,* (3d Cir. 1980) 614 F.2d 342; *Burquez v. Immigration Naturalization Service,* (10th Cir. 1975) 513 F.2d 751; *Henriques v. Immigration Naturalization Service,* (2d Cir. 1972) 465 F.2d 119, *cert. denied,* (1973) 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703; *Davis v. Richardson,* (3d Cir.

1972) 460 F.2d 772; *Brooks v. Califano, supra; Domozik v. Cohen,* (3d Cir. 1969) 413 F.2d 5; *Reyes v. Harris,* (D.N.Y.1980) 486 F.Supp. 1063.

We agree with these courts that the risk of an erroneous deprivation of unemployment benefits, the second factor considered in determining the requirements of due process, *Wilson v. Review Board of the Indiana Employment Security Division, supra,* is considerably lessened by the hearing official's development of the claimant's case. If the hearing officer complies with the duty imposed upon him by departmental regulation, we see no reason why the doctrine of harmless error should not apply. The alternative to applying the doctrine of harmless error—invalidating the proceedings and remanding for a new hearing—would be a wasteful and pointless administrative burden, another factor to consider in determining whether due process has been denied. *See Wilson, supra.*

That a claimant is not automatically denied due process by the failure of an Appeals Referee to advise of the right to counsel is further evidenced by the speedy appeal procedures available. In *Fusari v. Steinberg,* (1957) 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521, the Supreme Court reasoned that

> [p]rompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.

*Id.* at 380, 95 S.Ct. at 535. Berzins' opportunity for a prompt review is not disputed[2] in this case.

As we cannot find a definitive precedent establishing a duty to advise of a right to counsel in unemployment compensation cases, we decide this case on another basis, i. e. if the Appeals Referee has performed his duty to develop the case as required by

**2.** Berzins was first denied benefits by a Deputy Referee on March 17, 1981. An Appeals Referee conducted a hearing on April 14, 1981, his decision being affirmed by the Board on May 5,

1981. The appeal from the Board was assigned to this office of the Court of Appeals on August 19, 1981.

the regulation, due process is not denied. *Sotak, supra; Russel, supra; Walker, supra; see Marsh v. Harris, supra.*

■ It is incumbent on the claimant to demonstrate prejudice of such magnitude as to amount to a denial of due process. *Meeker v. Robinson*, (1977) Ind.App., 370 N.E.2d 392; *Kraft v. Himsel Stockyards*, (1957) 127 Ind.App. 238, 139 N.E.2d 569. Berzins has not carried her burden to show that the Appeals Referee failed to meet his affirmative duty to develop the case, thereby prejudicing her.

Her only point is that the Referee did not clarify how Berzins could have been at fault for the communications problem between her and the maintenance supervisor. She would have us believe the findings only reveal that the communications problem improved, the maintenance supervisor tendered his resignation, and Berzins was asked to resign. However, the findings also disclose that the administrator concluded Berzins was the root of the communications problem, which had not improved satisfactorily by the end of the thirty-day trial period. Berzins was told that she could remain at Americana Healthcare until she obtained other employment. Instead, she left before finding another job.[3]

Having examined the record carefully, it appears that the Appeals Referee fulfilled his statutory duty to develop the relevant facts. We further observe that the Referee asked numerous questions probing into the nature and source of the communications problem, the impact of it on her work, and the attempt to alleviate it. Both Americana Healthcare and Berzins were given ample opportunity to comment on testimony. Witnesses were examined and cross-examined, pursuant to regulation. We can only conclude that due process was not denied.

ISSUE TWO—Evidence and Conclusions—
 Were the findings supported by the evidence and was the conclusion supported by the findings?

PARTIES' CONTENTIONS—Berzins says that the Board assumed without evidence that she was the cause of the communication problem; hence, the request for her resignation was unjust and her absence from employment involuntary.

The Board counters that the evidence disclosed a communication problem between Berzins and the maintenance supervisor which was attributable to Berzins. The employer accordingly was justified in requesting her resignation and permitting her to remain at Americana Healthcare until she found other work. Because she left Americana Healthcare without first finding another job, the Board's conclusion that she voluntarily left her employment without good cause is supported by the findings and evidence.

CONCLUSION—The Board's findings were supported by the evidence, as the Board's conclusion was supported by the findings.

■ The burden is upon the claimant to prove she left her employment voluntarily with good cause. Whether good cause has been established is a factual determination for the Board. *Lewis v. Review Board of the Indiana Employment Security Division*, (1972) 152 Ind.App. 187, 282 N.E.2d 876; *National Furniture Manufacturing Co. v. Review Board of the Indiana Employment Security Division*, (1960) 131 Ind.App. 260, 170 N.E.2d 381.

■ As an appellate court, we are bound by the Board's negative decision unless it appears from the evidence reasonable men would be bound to reach a different conclusion. *Tauteris v. Review Board of the Indiana Employment Security Division*, (1980) Ind.App., 409 N.E.2d 1192. Our review of the evidence is limited to evidence supporting the Board's decision; we do not weigh the evidence. *Ervin v. Review Board of the Indiana Employment Security Division*, (1977) 173 Ind.App. 592, 364 N.E.2d 1189.

■ Evidence favorable to the Board's decision, elicited by the Appeals Referee,

3. *See* discussion *infra.*

reveals the administrator determined Berzins to be the communications problem.[4]

Although Berzins maintains she could not remain at Americana Healthcare after the resignation due to "pressure," the Appeals Referee concluded from the evidence that the "perceived pressure" was not grounded in fact.

On appeal, Berzins also claims she did not voluntarily leave her employment because she was asked to tender her resignation with no guarantee that she could remain at Americana Healthcare until other employment was located. The record belies her assertion:

Q. Mrs. Berzins, did I not stipulate to you that you would have your job at Americana until you found another job?

A. Yes, that is in the resignation, that was stipulated in the resignation, but because of the pressures . . . .

Record at 16.

So Berzins merely reweighs the evidence. There is conflicting evidence, including evidence supporting the findings, and the findings do support the decision.

Berzins having failed to present any reversible error, we affirm.

SHIELDS, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

Berzins does not argue that failure to advise her of the right to obtain counsel in and of itself resulted in a denial of due process. Rather she argues that absent such advisement the referee was obligated to seek out and develop all the facts and that he did not do so.

Given the posture of the case, duty to advise is not an issue to be addressed and I concur in the affirmance of the Review Board's decision.

---

4. Q. Did you ask the claimant to resign from your employment?

A. I did.

Q. What was the reason for that?

A. Approximately thirty days prior to my request for her resignation, I called her to my office and told her that she had a thirty-day period in which to satisfy me that communication between she [sic] and the Maintenance Supervisor, Mike Scherrell, was satisfactory. If she did not make that satisfactory communication, I was going to terminate her employment. Within one week period communication was satisfactory between the two of them, and the burden at that time was specifically on her. About the twentieth of February, I called her to my office, told her that I wanted her resignation, I told her that she could retain her job until she found another one, and the only stipulation I made with that request was that she during that period maintain satisfactory communication with Mr. Scherrell.

Q. What do you mean, *what was the communication problem?*

A. I am not sure what Mrs. Berzins' problem is in communication line, she . . . Mrs. Berzins was a supervisor and department head in the facility. Mr. Scherrell was a supervisor and department head in the facility. *The determination of myself, and my assistant, plus at least one other department head, other than the two of them, that Mrs. Berzins communication techniques were not the best.* The . . . Mr. Scherrell and Mrs. Berzins, by the nature of their job, department heads number one, and the type of work they do, number two, must work very closely together. They basically share the same office space, their supplies are in the same areas, they overlap sometimes in some of the types of work, some of the cleaning types of work that they do. *Mr. Scherrell came to me* at one particular point, this is close to the twentieth of February, *with a written resignation. His reason was that he could not work with Mrs. Berzins. On review of that, my determination was that Mrs. Berzins was, in fact, the problem of the two,* although I considered her to be a satisfactory housekeeper. I had no choice but to request her resignation. Record at 18–19 (emphasis added)