Jacqueline S. BERZINS, Appellant
(Defendant below),

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
William H. Skinner, David L. Adams,
and Paul M. Huston, as Members of and
constituting the Indiana Employment
Security Division, and Americana
Healthcare, Appellees (Plaintiffs below).

No. 982S347.

Supreme Court of Indiana.

Sept. 15, 1982.

William R. Clifford, Clifford & Gotshall,
Anderson, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana,
Gordon R. Medlicott, Deputy Atty. Gen.,
Indianapolis, for appellees.

HUNTER, Justice.

This cause is before us on the petition to
transfer of Jacqueline S. Berzins, wherein
she seeks review of the Court of Appeals'
opinion found at *Berzins v. Review Board
of Ind. Emp. Sec. Div.*, (1981) Ind.App., 427
N.E.2d 1121. There, the Second District
Court of Appeals affirmed the Review
Board's denial of Berzins's unemployment
compensation claim. We grant transfer
and vacate the opinion of the Court of

Appeals for the purpose of resolving a conflict between the various Districts of our Court of Appeals. Ind.R.App.P. 11(B)(2)(c). That conflict concerns the following questions of law:

1. Whether Berzins had a due process right to an administrative procedure reasonably calculated to inform her of the right to be represented by counsel at the referee's evidentiary hearing; and

2. Whether the failure to so inform Berzins *per se* requires reversal of the Board's determination.

Claimant Berzins applied for unemployment compensation benefits following the termination of her employment as a housekeeping supervisor at an Indianapolis nursing home operated by Americana Healthcare. The initial and summary evaluation of her claim by a deputy of the Indiana Employment Security Division resulted in the determination that Berzins had "voluntarily left employment without good cause" and consequently did not qualify for benefits.

Berzins then filed a timely request for a hearing before an appeals referee, who conducted an evidentiary hearing on her claim. The record reveals that claimant Berzins appeared *pro se* at the hearing, while Americana Healthcare was represented by its nursing home administrator Gerald McGowan. Based on the testimony and evidence presented at the hearing, the appeals referee affirmed the deputy's determination that Berzins did not qualify for unemployment compensation.

Berzins then appealed to the Review Board of the Indiana Employment Security Division. Pursuant to Administrative Rule and Regulation (§ 22–4–17–6)–3 (Burns 1976), the Review Board opted to forego a second evidentiary hearing. Based on the hearing conducted before the referee, the Review Board also found that Berzins had voluntarily left her employment without good cause and affirmed the denial of her claim for benefits.

Berzins then sought judicial review of the Review Board's decision. Among the contentions she presented to the Court of Appeals was her claim that the failure of the Employment Security Division to advise her of the right to be represented by counsel at the referee's evidentiary hearing warranted reversal of the Review Board's decision. In response, the Board argued that whether due process required that Berzins be informed of her right of representation, her substantial right to a fair hearing had been accorded her. The Second District Court of Appeals agreed with the Board's position and affirmed its denial of benefits. *Berzins v. Review Board of Ind. Emp. Sec. Div., supra.*

In her petition to transfer, Berzins correctly asserts that a conflict exists between the various Districts of our Court of Appeals with respect to whether a duty exists to inform the parties to unemployment compensation disputes of their right to representation at evidentiary hearings. Likewise, Berzins acknowledges that a conflict also exists with regard to the effect a failure to so advise the parties has on the proceedings. We here resolve these conflicts.

### I.

At the outset of our analysis we note that the question before us is not whether the parties to unemployment compensation proceedings have the right to obtain and utilize representation. The due process guarantees of our Constitutions provide that right to citizens in administrative proceedings. U.S.Const. amend. XIV; Ind.Const. art. 1, § 12; *Hamm v. Review Board of Ind. Emp. Sec. Div.,* (1961) 132 Ind.App. 318, 177 N.E.2d 337. Neither, we emphasize, is the question before us whether a party is entitled to be provided with counsel by the Indiana Employment Security Division; due process, not the Sixth Amendment guarantee of counsel, is at issue. *See, generally, Goldberg v. Kelly,* (1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

The precise question before us is whether due process requires the Employment Security Division to utilize procedures reasonably calculated *to inform* a party of the

right to be represented by counsel at evidentiary hearings. The majority of the Court of Appeals' Districts which have addressed the question has answered it in the affirmative.

Both the First and Fourth Districts have held that due process minimally requires that notice of the right of representation must be provided to parties prior to the referee's evidentiary hearing. *Sotak v. Review Board of Ind. Emp. Sec. Div.*, (1981) Ind.App., 422 N.E.2d 445 (First District); *Leon-Roche v. Review Board of Ind. Emp. Sec. Div.*, (1981) Ind.App., 419 N.E.2d 801 (Fourth District); *Felders v. Review Board of Ind. Emp. Sec. Div.*, (1981) Ind.App., 419 N.E.2d 190 (First District); *Foster v. Review Board of Ind. Emp. Sec. Div.*, (1980) Ind.App., 413 N.E.2d 618 (First District); *Sandlin v. Review Board of Ind. Emp. Sec. Div.*, (1980) Ind.App., 406 N.E.2d 328 (Fourth District). The Third District, however, relying on *Paoloco v. Commonwealth, Unemp. Bd. of Rev.*, (1973) 10 Pa.Cmwlth. 214, 309 A.2d 594,[1] has held that due process does not "require that the referee tender such advice" at the unemployment compensation hearing. *Walker v. Review Board of Ind. Emp. Sec. Div.*, (1980) Ind.App., 404 N.E.2d 1363, 1365. The Second District has not adopted a position; in the instant case, it resolved Berzins's claim on the basis that Berzins's substantial rights to a fair hearing had not been violated, notwithstanding the fact that she had not been informed of the right to be represented. *Berzins v. Review Board of Ind. Emp. Sec. Div., supra.*

■ We adopt the position taken by the First and Fourth Districts. We hold that due process does require some form of procedure reasonably calculated to provide notice to employers and claimants of the right to be represented at evidentiary hearings conducted by the Employment Security Division.

Both this Court and the United States Supreme Court have recognized that due process is not a fixed and immutable concept unrelated to time, place, and circumstances. Rather, due process is the product of human experience, reason, and the past course of decisions; it is a flexible concept which demands such "procedural protections as the particular situation demands." *Wilson v. Review Board of Ind. Emp. Sec. Div.*, (1979) Ind., 385 N.E.2d 438, 444. *See also, Mathews v. Eldridge*, (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Cafeteria Workers v. McElroy*, (1961) 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230. In any given situation, the procedural dictates of due process are determined via a balancing of three factors, as explained by Justice Pivarnik in *Wilson v. Review Board of Ind. Emp. Sec. Div., supra:*

"In order to determine the specific dictates of due process in a given situation, it is necessary to balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards, and; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.*, Ind., 385 N.E.2d at 444, *citing Mathews v. Eldridge, supra.*

Once a claimant's status as an insured worker is established pursuant to Ind.Code § 22–4–17–2(a) (Burns 1982 Supp.), there can be no doubt that any evidentiary hearing conducted on the claim is of significant import for the claimant. Unemployment compensation provides a claimant and family with the means to purchase essentials such as food and housing; in turn, the benefits serve the health, morale, and general welfare of the claimant and family.

---

1. *Paoloco* now represents dubious authority for the proposition relied on in *Walker v. Review Board of Ind. Emp. Sec. Div., supra.* Nine months after *Walker* was decided, the Supreme Court of Pennsylvania expressly disapproved of its position in *Paoloco, albeit obiter dictum;* the Court divided on other grounds. *Commonwealth, Unemp. Comp. Bd. v. Ceja*, (1981) 493 Pa. 588, 427 A.2d 631, 643, n. 35.

*Sandlin v. Review Board of Ind. Emp. Sec. Div., supra; Nordhoff v. Review Board,* (1959) 130 Ind.App. 172, 162 N.E.2d 717. These concerns prompted the passage of the Employment Security Act by our General Assembly, which recognized that unemployment compensation serves both the private and the public interest. Its declaration is unequivocal:

"[T]he public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this measure to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for a state employment service is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state." Ind.Code § 22–4–1–1 (Burns 1974).

Juxtaposed with these significant private and public interests at stake at an evidentiary hearing must be factors "2" and "3" of the balancing test enunciated in *Mathews* and *Wilson.*

Factor two of the test requires an assessment of the risk of an erroneous deprivation of such interest by virtue of the procedures used, together with the probable value, if any, of additional or substitute safeguards. For the claimant or employer who proceeds *pro se* at an unemployment compensation evidentiary hearing, a procedural safeguard does exist. The Employment Security Division's own administrative regulation requires that when a party proceeds *pro se,* the hearing referee must act to assure that a full presentation of the case occurs:

"Where either party fails to appear or where either party is not represented by an attorney or duly authorized agent, it shall be the duty of the referee to examine such party's witnesses, and to cross-examine all witnesses of the other party, in order to insure complete presentation of the case." Administrative Rule and Regulation (§ 22–4–17–3)–2 (Burns 1976).

The self-imposed duty is a sound one, no doubt facilitating the goal of a complete revelation of the facts relevant to the claim.

At the same time, however, it is recognized that a heavy caseload confronts the Employment Security Division. A referee may conduct several hearings in any one day; in none of those cases will the facts relevant to the claims have been previously developed. We cannot and should not expect that in each and every instance, the referee, who first must bear the administrative burden of conducting the hearing, will also immediately grasp the factual nuances particular to each and every claim and fully develop the facts relevant thereto. Indeed, our case precedent reveals the fraility of that hope. *See, e.g., Sotak v. Review Board of Ind. Emp. Sec. Div., supra* (cause remanded for new evidentiary hearing due to the "anemic" presentation of *pro se* claimant's case); *Russell v. Review Board of Ind. Emp. Sec. Div.,* (1981) Ind.App., 415 N.E.2d 774 (cause remanded for new evidentiary hearing due to referee's failure to fulfill his duty); *Sandlin v. Review Board of Ind. Emp. Sec. Div., supra* (cause remanded for new evidentiary hearing due to referee's failure to adequately develop *pro se* claimant's case); *compare, Foster v. Review Board of Ind. Emp. Sec. Div., supra* (referee's handling of hearing effectuated complete presentation of *pro se* claimant's case).

It is also noted that Administrative Rule and Regulation (§ 22–4–17–3)–2, *supra,* permits the referee in his deliberations to "consider all hearsay evidence *of whatever nature* to which timely objection is not made by an 'interested party.'" (emphasis added). The objection obviously cannot be

made by the referee. Rather, it must come from an "interested party." A party proceeding *pro se* will usually lack the understanding of hearsay rules to invoke the timely objection; while hearsay evidence alone will not support a referee or Review Board's determination, the admission of damaging but dubious evidence may play a major role in defeating a party's position. *See, e.g., Cornell v. Review Board of Ind. Emp. Sec. Div.,* (1979) Ind.App., 383 N.E.2d 1102.

That the hearing is conducted in an informal manner does not negate these considerations. The less learned the party, the greater the handicap confronting him. For instance, in *Sandlin v. Review Board of Ind. Emp. Sec. Div.,* the referee discovered late in the evidentiary hearing that the claimant before him had only a seventh grade education and was unable to read. The discovery prompted the following colloquy between the referee and claimant:

REFEREE: "Alright I'm going to tell you something that I think you should have brought this to my attention at the beginning of this hearing if you have trouble reading. I think you've waived the right to a lawyer by going ahead here today, but in the event this decision goes against you, you have a right of appeal. If this decision goes against you and you want to appeal it I would suggest you go either to Legal Aide Society for free legal help, or the Legal Services Organization. Anybody that's in any of these claims and cannot read, you're under a severe disadvantage. I think since you didn't bring it up and it was the employer's testimony that you waived the right to that at this hearing, so I'm going to go ahead and decide the case on what I've heard today. In the event this is appealed all of this testimony is reduced to writing. If you can't read you'd be under severe disadvantage. Do you have anything else you want to say?"

MR. SANDLIN: "No uh I can read the writing a little bit but I can't see it."

REFEREE: "Well if you can't see it it's just as bad as not being able to read isn't it?"

MR. SANDLIN: "That's right. I needed glasses all my life. I needed glasses when I was six years old when I first started to school."

REFEREE: "Alright I'm going to show the hearing adjourned. The claimant and the employer will each receive a copy of the written determination in the mail in about two weeks. Thank you all for coming in."

*Sandlin v. Review Board of Ind. Emp. Sec. Div., supra,* Ind.App., 406 N.E.2d at 328.

It must be conceded that, as the referee acknowledged, the potential for problems which confronts the party appearing *pro se* at an evidentiary hearing is exacerbated when the party suffers illiteracy or a lack of education.

These various considerations compel our conclusion that a procedure reasonably calculated to give notice to a party of the right of representation at an evidentiary hearing would provide a tangible safeguard to an erroneous deprivation of a party's interest at the hearing. Once notified of the right, a party may obtain trained representation who can thoroughly investigate the case, prepare to cross-examine and present witnesses, and to interpose the objections necessary to preclude consideration of improper evidence.

The third factor of the balancing test enunciated in *Mathews* and *Wilson* requires an examination of the government's interest, including the function involved and the administrative burdens that the additional or substitute procedural requirements would entail. To be sure, if the parties were not informed of the right to obtain and utilize representation until the advent of the evidentiary hearing, burdensome delays might follow from the assertion of the right. That need not be the case, however, as Judge Chipman explained in *Sandlin v. Review Board of Ind. Emp. Sec. Div., supra,* Ind.App., 406 N.E.2d at 332:

"What then are the legitimate interests of the State in making no attempt to inform a claimant of his Fourteenth

Amendment due process right to appear by counsel during the administrative proceedings in question? Many forms and notices are already supplied to a claimant involved in the administrative process, including a notice of the evidentiary hearing before the referee. These forms and notices could easily include a statement telling the claimant of his right to appear by counsel. This simple method of informing a claimant of his due process right could be accomplished at little expense. We are not saying it would be necessary for the Board to inform the claimant of his right to counsel on the record at the referee's hearing, at a time when the information would be least helpful and may perhaps lead to a disruptive delay in the proceedings. *See Walker v. Review Board of the Indiana Employment Security Division,* 404 N.E.2d 1363 (Ind.App.1980). Including the information in a written notice prior to the referee's hearing would allow claimant time to consult with an attorney if he chooses to do so. (Footnote omitted.) *Accord, Leon-Roche v. Review Board of Ind. Emp. Sec. Div., supra.* In short, we find no administrative or economic burden on the state which would result if the notice provided to the parties appeared on one of the numerous forms which are sent to them. Furthermore, as we have previously explained, this state has a countervailing interest in the dispensation of unemployment compensation which lends support to the proposition that notice should be supplied to the parties.

We conclude that inasmuch as parties before the Indiana Employment Security Division have a constitutional right to obtain and utilize representation at evidentiary hearings, due process also requires that some form of notice reasonably calculated to inform the parties of the right to be provided to them by the Board.[2] *Sotak v.*

*Review Board of Ind. Emp. Sec. Div., supra; Leon-Roche v. Review Board of Ind. Emp. Sec. Div., supra; Sandlin v. Review Board of Ind. Emp. Sec. Div., supra; accord, Brooks v. Califano,* (D.Del.1977) 440 F.Supp. 1341; *Caldwell v. Laupheimer,* (E.D.Pa. 1969) 311 F.Supp. 853; *Sims v. Juras* (D.Or. 1969) 313 F.Supp. 1212; *Brown v. Lavine,* (1975) 37 N.Y.2d 317, 372 N.Y.S.2d 75, 333 N.E.2d 374; *compare, Ireland v. Daniels,* (1981) 273 Ark.App. 44, 616 S.W.2d 33. Due process is not a matter to be grudgingly extended to our citizens. It cannot be assumed that each and every party scheduled to appear at an unemployment compensation evidentiary hearing understands that the right to utilize representation exists.[3] Judge Chipman assessed the ramifications of such ignorance:

"Indeed we agree with the appellant that a right to counsel, as with any other right, is a 'non-right' to a person who is ignorant of the matter. Query whether the Board could, consistent with due process, simply choose not to inform a claimant that he has a right to judicial review of administrative action—a right which our Indiana Supreme Court has held to be of constitutional dimension. *Warren v. Indiana Telephone Co.* (1940) 217 Ind. 93, 26 N.E.2d 399." *Sandlin v. Review Board of Ind. Emp. Sec. Div., supra,* Ind.App., 406 N.E.2d at 333.

Notice reasonably calculated to inform the parties of the right to utilize representation will eliminate the specter of due process unwittingly foresaken. In turn, it will serve to perpetuate public confidence in the validity and fairness of unemployment compensation proceedings—another goal of due process. *Morgan v. United States,* (1938) 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129.

While the application of the balancing test enunciated in *Wilson* and *Mathews,* as

---

2. To the extent *Walker v. Review Board of Ind. Emp. Sec. Div.,* (1980) Ind.App., 404 N.E.2d 1363, holds otherwise, it is expressly disapproved.

3. As was also noted in *Sandlin,* an illiterate party, once supplied with written notice, has a

duty to inform himself of its contents. *Sandlin v. Review Board of Ind. Emp. Sec. Div., supra,* Ind.App., 406 N.E.2d at 332, n. 4, *citing Neal v. Review Board of Ind. Emp. Sec. Div.,* (1972) 153 Ind.App. 630, 288 N.E.2d 561.

well as principles of fundamental fairness, compel our conclusion, the precise method and manner of notice which is provided to parties remains the province of the Employment Security Division. Here, the failure to provide Berzins with any notice of her right to obtain and utilize representation at the evidentiary hearing was error.

## II.

Berzins maintains that the Employment Security Division's error in failing to inform her of her right to utilize representation at the evidentiary hearing requires that her claim be remanded to the agency for a new evidentiary hearing. Relying on *Leon-Roche v. Review Board of Ind. Emp. Sec. Div., supra,* and *Sandlin v. Review Board of Ind. Emp. Sec. Div., supra,* she maintains the failure to so inform her requires reversal *per se.*

Like Issue I, the effect of the failure of the Employment Security Division to notify a party of the right to utilize representation is a matter upon which the various Districts of the Court of Appeals have divided. In *Leon-Roche,* upon which Berzins relies, the Fourth District Court of Appeals held that the agency's failure to properly inform a party of the right to utilize representation automatically requires reversal and a new evidentiary hearing. each of our other Districts, however, has taken a contrary position; the majority view has been that absent prejudice to the complaining party, the error is deemed harmless. *See, e.g., Berzins v. Review Board of Ind. Emp. Sec. Div., supra* (Second District); *Russell v. Review Board of Ind. Emp. Sec. Div., supra* (Third District); *Felders v. Review Board of Ind. Emp. Sec. Div., supra* (Young, J., dissenting) (First District). Consequently, where these latter courts have found that the hearing referee fulfilled his duty pursuant to Administrative Rule and Regulation (§ 22–4–17–3)–2, *supra,* to insure a "complete presentation of the case," the harmless error doctrine has been invoked. *See,*

*e.g., Felders v. Review Board of Ind. Emp. Sec. Div., supra; Foster v. Review Board of Ind. Emp. Sec. Div., supra.* On the other hand, where the courts have found that the hearing referee failed to fulfill his duty and that a complete presentation of the case had not occurred, reversal and a new evidentiary hearing was granted. *See, e.g., Sotak v. Review Board of Ind. Emp. Sec. Div., supra; Russell v. Review Board of Ind. Emp. Sec. Div., supra.*

■ We join the majority of our Court of Appeals' Districts and conclude that the failure of the Indiana Employment Security Division to notify a party of the right to utilize representation at an evidentiary hearing does not *ipso facto* require reversal and a new hearing.[4] The notice requirement serves as an additional safeguard to an erroneous and arbitrary deprivation of a party's interests; if the hearing referee fulfills his duty and effectuates a complete presentation of the case, however, there is no need to remand the cause to the Employment Security Division and impose on that agency the time-consuming exercise of another hearing. The harmless error doctrine, as embodied in Ind.R.App.P. 15(E), has its place in judicial review of administrative proceedings. *Department of Financial Institutions v. Colonial Bank & Trust Co.,* (1978) Ind.App., 375 N.E.2d 285; *Ogilvie v. Review Board of Ind. Emp. Sec. Div.,* (1962) 133 Ind.App. 664, 184 N.E.2d 817. To be sure, the doctrine of harmless error should be "gingerly" invoked when basic procedural rights are at stake in the administrative context. *Yiu Fong Cheung v. Immigration and Naturalization Service,* (D.C.Cir.1969) 418 F.2d 460, 464. Ultimately, the basic procedural right at issue is not the right to counsel or notice thereof, but rather the right to a full and fair evidentiary hearing. The various decisions of our Court of Appeals' Districts reflect an appreciation and judicious regard for that dispositive factor; it is a matter which inherently requires a case-by-case assessment. *Sotak v. Review*

---

**4.** To the extent *Leon-Roche v. Review Board of Ind. Emp. Sec. Div., supra,* holds otherwise, it is hereby disapproved.

*Board of Ind. Emp. Sec. Div., supra; Feld+ers v. Review Board of Ind. Emp. Sec. Div., supra; Russell v. Review Board of Ind. Emp. Sec. Div., supra; Foster v. Review Board of Ind. Empl. Sec. Div., supra.*

We consequently reject Berzins's contention that the failure of the Employment Security Division to inform her of her right to utilize representation at the evidentiary hearing *per se* requires that a new hearing be conducted on her claim. Berzins argues, however, that she did suffer prejudice by virtue of the lack of notice; she maintains the hearing referee failed in his duty to effectuate a "complete presentation of the case." Administrative Rule and Regulation (§ 22–4–17–3)–2, *supra.*

 We disagree. The record reveals that Berzins's termination from Americana Healthcare had its inception in a personal problem which had developed between her and the maintenance supervisor at the nursing home. According to Berzins, the dispute between the two stemmed from an unpaid debt owed to her by the maintenance supervisor; the personal problem created an on-the-job communications gap between the two, according to Berzins.

McGowan, the administrator of the nursing home, testified he was concerned over the communications problem because the two shared office space, work areas, and overlapping duties in their respective positions as housekeeping and maintenance supervisors. Inasmuch as it was his conclusion, as well as that of another department head, that Berzins's "communication techniques were not the best," he informed Berzins in mid-January of 1981 that she had thirty days in which to satisfy him that communications between herself and the maintenance supervisor were satisfactory. It is undisputed that within a week, communications between the two had improved.

On February 20, 1981, however, the maintenance supervisor tendered his resignation. The record does not reveal the catalyst for the tender. In response to the maintenance supervisor's action, however, administrator McGowan requested Berzins's resignation.

Berzins then drafted her resignation and took it to the administrator, where she signed it. It is uncontroverted that the administrator stipulated to Berzins that she could remain in the employment of Americana Healthcare until she found other employment.

Shortly thereafter, however, Berzins stopped returning to work. She never communicated her intentions to stop appearing for work with any superiors. At the hearing, Berzins explained that she ceased appearing for work because of the mental pressure of dealing with the maintenance supervisor, who remained in the employment of Americana Healthcare. She stated that the maintenance supervisor continued to harass her, exacerbating the mental anxiety she already suffered by virtue of problems at her home.

Berzins argues the referee should have acted to develop more fully the facts concerning the nature of the dispute between herself and the maintenance supervisor, as well as the pressures which prompted her to stop appearing for work. Similarly, she argues the referee should have required that the written resignation be submitted into evidence and established whether her position was filled after her departure.

*In the circumstances present here,* we reject these contentions. It is dispositive that Berzins stopped appearing for work notwithstanding the fact that her resignation, whatever its motivation, included the employer's stipulation that she could continue working for Americana Healthcare until she found another job; her reasons for failing to continue in her job are not attributable to her employer but rather consisted of personal reasons, including her poor relationship with her fellow supervisor and problems at home. These personal motivations for quitting work disqualify her from receiving unemployment compensation benefits. *York v. Review Board,* (1981) Ind. App., 425 N.E.2d 707; *Martin v. Review Board,* (1981) Ind.App., 421 N.E.2d 653. These undisputed facts, with their outcome-determinative character, undercut Berzins's argument that the referee failed to fulfill

his duty under Administrative Rule and Regulation (§ 22–4–17–3)–2, *supra.*

Pursuant to Ind.R.App.P. 11(B)(3), it is our responsibility to address other arguments raised in Berzins's brief filed with the Court of Appeals. Berzins maintains the Review Board erred in failing to review the evidence produced at the hearing conducted by the referee. Her contention is predicated on the fact that the transcript of the hearing was not prepared until she sought judicial review of the Review Board's decision; she maintains the Review Board, acting without the transcript, merely "rubber stamped" the referee's decision. At the same time, she concedes she has no knowledge of the internal machinations of the Employment Security Division.

The hearing before the referee was tape-recorded. In the absence of evidence to the contrary, it must be assumed the Review Board acted properly and, in good faith, reviewed the tape-recorded testimony. *Guevara v. Inland Steel Co.,* (1951) 121 Ind.App. 390, 95 N.E.2d 714. Berzins's contention is without merit.

Berzins also contends the evidence was insufficient to sustain the findings of fact rendered by the Review Board; concomitantly, she maintains the findings of fact do not support the conclusion of law that she voluntarily left her employment with Americana Healthcare. We have previously discussed the evidence presented; as we explained, the evidence supports the conclusion that Berzins voluntarily left work for personal reasons.

For all the foregoing reasons, there was no error and the denial of unemployment compensation benefits should be affirmed.

Denial affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.