**YIU FONG CHEUNG, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 21828.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 28, 1968.

Decided March 20, 1969.

Burger, Circuit Judge, dissented.

23. See People v. Pickens, 61 Cal.App. 405, 214 P. 1027, 1028–1029 (1923).

Mr. Jack Wasserman, Washington, D. C., for petitioner.

Mr. Charles Gordon, General Counsel, Immigration and Naturalization Service, of the bar of the Supreme Court of the United States, pro hac vice, by special leave of Court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for respondent.

Before FAHY, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case comes before us on a petition for review of a deportation order.[1]

Respondent seeks affirmance on the ground, inter alia, that deportability is established by the facts set forth in the order to show cause issued November 17, 1967, and admitted by petitioner at the deportation hearing held that day. These facts are, simply, that petitioner is a national of China, who came to the United States on April 26, 1967; he was permitted to enter as a non-immigrant crewman for a period not exceeding 29 days; he overstayed his permit and on November 16, 1967, he was arrested in Richmond, Virginia.

We are concerned with the procedure followed by the Service. On November 16, 1967, an inspector arrested petitioner without a warrant and brought him to Washington, D. C. At 1:35 p. m. the next day petitioner was served with a warrant of arrest and an order to show cause, issued by the District Director at Washington, which charged petitioner with staying longer than permitted, and ordered him to appear for hearing before a special inquiry officer at 2 p. m. the same day.

The transcript sets forth that the special inquiry officer, through an interpreter, advised petitioner that he had the right to be represented at the hearing by counsel of his own choice, and that petitioner replied he would proceed without a lawyer. In response to questions put by the hearing officer, petitioner admitted he had stayed beyond the permitted period, and said he wished to apply for voluntary departure, and leave the United States without expense to the Government. The order duly granted petitioner the privilege of voluntary departure, with a further provision for deportation to Hong Kong in case of failure to depart within the time set by the District Director.

On December 1, 1967, petitioner, now represented by counsel, filed a "motion for reopening" of the proceeding stating that petitioner did not intelligently waive counsel, and was effectively denied an opportunity to seek counsel, and was not provided with a competent interpreter in his own dialect.[2]

The special inquiry officer denied petitioner's motion to reopen, and the Board of Immigration Appeals dismissed his appeal.

1. *The interpreter issue*

The transcript contains statements by the hearing officer, that among those present is "the official interpreter in the Chinese language, Dale Barnes," and by Mr. Barnes that he and petitioner had conversed with and understood each other. Notwithstanding these recitations an issue requiring resolution was raised by petitioner's claim that he was not provid-

---

1. Filed pursuant to 8 U.S.C. § 1105a (1964).

2. Petitioner's brief states that in another hearing Mr. Barnes is listed as speaking Mandarin dialect. Petitioner is a native of Shanghai, where apparently the dialect commonly spoken is the Shanghai or Cantonese dialect.

ed with a competent interpreter in his own dialect.[3]

The special inquiry officer, in denying petitioner's motion, said: "I observed the respondent and the official interpreter who served at this hearing. They conversed with each other fluently in the Chinese language and with no apparent difficulty. The respondent at the hearing raised no question about the interpreter, nor did he indicate at any time that he and the interpreter had difficulty in understanding each other."

The Board of Immigration Appeals said: "The record contains nothing to show that the alien did not understand the interpreter assigned at the hearing."

To this, petitioner replies that there was raised a triable issue which could only be resolved at an evidentiary hearing, citing e. g. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

We are not called upon to decide that an evidentiary hearing was required because of petitioner's bare allegation that he was not provided with a "competent interpreter in his own dialect." Perhaps his conclusory allegation meant that he considered Mr. Barnes inept (in Cantonese vocabulary, syntax, or colloquial usage), but not necessarily incomprehensible.

Petitioner did not say in so many words that he could not understand Mr. Barnes.[4] But we need not resolve this point because the issue does not stand alone.

2. *The failure to provide the time required by regulations before beginning the deportation hearing*

A more troubling aspect of the case lies in the abbreviated period—only 25 min-utes—provided by the order to show cause for the beginning of the deportation hearing.

The pertinent regulations provide, see 8 CFR 242.1 (1968):

The order will call upon the respondent to appear before a special inquiry officer for hearing at a time and place stated in the order, not less than seven days, after the service of such order, except that where the issuing officer, in his discretion, believes that the public interest, safety, or security so requires, he may provide in the order for a shorter period. The issuing officer may, in his discretion, fix a shorter period in any other case at the request of and for the convenience of the respondent.

■ Petitioner's counsel notes that there was no express finding by the issuing officer that a period shorter than seven days is required in the public interest, safety or security. But the regulations do not require a finding as such, and the lack of an express recitation is not fatal.

However, the presentation made to us indicates that the hasty procedures used reflect misunderstanding of applicable legal principles.

Government counsel argued that the early hearing may have resulted from the District Director's desire to minimize the period of incarceration of a man under arrest. This would have been a commendable objective, but that objective obviously could have been achieved by affording the seven days notice provided in the regulations and accompanying it with advice that the hearing will be held earlier if the alien so requests.[5] That is,

---

3. Ponce v. McGrath, 91 F.Supp. 23 (S.D. Cal.1950).

4. Indeed, the words of petitioner's affidavit are consistent with his being able to speak Mandarin, although the brief of petitioner's counsel to the Service stated he did not.

5. Indeed the file shows that Form I–221, Order to Show Cause and Notice of Hearing, contains a pre-printed section: "Request for Prompt Hearing. To expedite determination of my case, I request an immediate hearing, and waive any right I may have to more extended notice." The form in the file before us is unsigned, and there is no claim that the 2 p. m. time on the face of the show cause order was in any way a response to a request by petitioner.

of course, precisely the thrust of the last sentence of the regulation quoted above.

Government counsel also argues that the District Director was merely fulfilling the mandate of § 287(a) (2) of the Immigration and Nationality Act, that an alien arrested without warrant "shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their rights to enter or remain in the United States." 8 U.S.C. § 1357(a) (2) (1964).

██ This argument reflects a misunderstanding of the statute. The "without delay" clause is like that in Rule 5(a) of the Federal Rules of Criminal Procedure which directs that an arrested person shall be taken "without unnecessary delay" before a commissioner. But the presentation to the commissioner is not for the purpose of beginning the trial, but only for a "preliminary examination," to ascertain whether there is probable cause to hold the suspect in detention pending the issuance of charges and trial. Similarly here § 287(a) (2) of the Act requires that the alien be taken for examination before an officer qualified to conduct examinations. His function is not to conduct the deportation hearing, but to ascertain whether there is probable cause for detention pending the issuance of charges (in the show cause order) and conduct of the hearing.[6]

The regulations expressly provide for beginning of § 242 deportation proceedings if "the examining officer is satisfied that there is prima facie evidence establishing that the arrested alien is in the United States in violation of the immigration laws."[7] And the regulations further provide that the alien's case shall be presented promptly, and in any event within 24 hours, to the district director for determination as to whether there

is prima facie evidence that the alien is in the United States in violation of law and for issuance of an order to show cause and warrant.[8]

The charges, when issued, should provide seven days to prepare for the hearing, unless a shorter period is requested by the alien or is affirmatively required by the public interest.

The seven-day period not only provides a general opportunity to prepare for hearing, but also a particular opportunity for the alien to engage in consultation—perhaps with friends that he may contact or who may contact him—that will enable him to make a meaningful determination as to whether he wishes to proceed without counsel. This is particularly significant since counsel is not provided by the Government. Reasonable notice and opportunity to consult with friends on the outside gives an alien under detention a meaningful opportunity to obtain information as to what counsel may be available, and at what cost, and to consider what services counsel may provide, as to release under bond, representation at the hearing, and representation concerning administrative remedies.

Assuming that petitioner, at his hearing, said that he wished to proceed without the counsel he was told he could hire if he wished, the quality of this statement as an informed waiver is undercut by the failure to provide the time, specified by regulations, that would have given opportunity for information and reflection concerning the pro's and con's of proceeding without counsel.

 There can be no doubt of the need for providing full opportunity to retain counsel. The regulations require the officer to whom the alien is presented immediately after arrest, pursuant to § 287(a) (2), to advise the alien, assuming he finds cause for detention, of the rea-

6. United States ex rel. Martinez-Angasto v. Mason, 344 F.2d 673, 680 (2d Cir. 1965). GORDON AND ROSENFELD, IMMIGRATION LAW AND PROCEDURE § 5.4b, at 5–29 (rev. ed. 1967).

7. 8 C.F.R. § 287.3 (1968).

8. *Ibid.*

son for his arrest and his right to be represented by counsel of his choice.[9] The examining officer must also advise the alien "that any statements he makes may be used against him in a subsequent proceeding." This interrelates with the need for assuring opportunity to obtain counsel before the alien is required to give testimony.[10]

■ The case thus presents the serious situation of an alien arrested without warrant who was not brought before an examining officer prior to the show cause order, and was not given the seven-day notice of deportation hearing, provided in the regulations, which would have given him time to consult with friends concerning possibilities of retaining counsel. If the first advice that he had a right to be represented by counsel was given when the deportation hearing began, 25 minutes after the issuance of the show-cause order, that is hardly the equivalent of the notice and advice contemplated by the regulations.[11]

### 3. *The significance of petitioner's conceded deportability*

Throughout the opinion of the Service denying a reopening and the brief of Government counsel runs the thread of immateriality—What difference does this make, what prejudice can be shown, since petitioner is patently deportable?

While there is limited room in administrative law for the doctrine of harmless error [12] this must be used gingerly, if at all, when basic procedural rights are at stake.

Though it is not a perfect analogy it is not immaterial that the doctrine that a conviction may be affirmed notwithstanding denial of a constitutional right —if it is established beyond a reasonable doubt that the error did not contribute to the result—is a principle that is subject to the qualification that some rights, like the assistance of counsel, are so basic to a fair trial that their infraction can never be treated as harmless error.[13]

While petitioner's counsel raised the possibility of legal problems,[14] perhaps there is more significance in his comments that a lawyer could be helpful to an alien even if deportability seemed clear. He might at a minimum advise the alien where to be deported. He might seek more time for a voluntary departure, and perhaps make arrangements to process a claim for a preference,[15] and for departure to another country as a point to seek lawful entry. He might in appropriate cases arrange interim bail.

---

9. *Ibid.*

10. Since the expulsion process is not a criminal proceeding there is no right to remain mute at the deportation hearing, but there is a statutory right to advice of counsel before testimony is called for. (Of course we do not imply that the alien need respond to any particular question to which the response would be self-incriminating.) GORDON & ROSEN-FELD, *supra* note 6, § 5.10f, at 5–93. *See also id.* § 1.23a, at 1–87; 8 U.S.C. §§ 1252(b) and 1362 (1964).

11. The printed form of Order to Show Cause contains printed advice—in English—of right to be represented by counsel.
 The regulations provide that an officer serving a warrant of arrest shall explain to the alien the contents of the order to show cause, the reason for the arrest, his right to be represented by counsel of his choice at no expense to the Government, and the fact that any statement he makes may be used against him. 8 C.F.R. § 242.2(a) (1968).

12. *See* Braniff Airways, Inc. v. CAB, 126 U.S.App.D.C. 399, 411, 379 F.2d 453, 465 (1967).

13. Chapman v. California (1967), 386 U.S. 18, at 23, 87 S.Ct. 824, 17 L.Ed.2d 705, and cases cited note 8 thereof, including Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963).

14. He claims the warrantless arrest was invalid. Respondent answers that no fruit of the arrest was in the record.

15. Counsel suggested at argument that a 6th preference might be available for a specialty cook.

The case is apparently one where the Service has failed to comply with its regulations even though the alien was a man arrested without a warrant and processed on an assumption of waiver of counsel. We say "apparently" because the record is not as clear as we should like, and if anything turned on the point we might proceed by way of remand without reversal. And in some other case a court might well invoke the doctrine of harmless error to avoid reversal. But this particular case involves neither a long hearing completed nor a long rehearing on remand. We think it in the interest of justice to vacate the deportation order and remand for further proceedings that will scrupulously comply with the regulations issued by the Service and provide all the safeguards contemplated therein.

So ordered.

BURGER, Circuit Judge (dissenting):

Petitioner's claims on appeal are purely dilatory processes to keep him in the country a little longer, until—as conceded at oral argument—some "administrative exception" can be developed for him. Nevertheless, no basis for making such an exception has been suggested; in fact, Petitioner has conceded that he was illegally in the United States when apprehended. Dilatory tactics are not new in deportation cases; they are the rule rather than the exception and they ought not to be encouraged by the courts.

The majority's juxtaposition of the right to counsel claim and the interpreter issue cannot suffice as a justification for reversal and remand. Although Petitioner contends that he was not provided with a competent interpreter in his own particular dialect, it is significant that he does not allege an inability to understand or communicate with the interpreter. Moreover, since the Special Inquiry Officer was in a position to view both the interpreter and Petitioner, great weight should be given to his finding that they "conversed with each other fluently." Taken together with the Board of Immigration Appeals' statement that "[t]he record contains nothing to show that the alien did not understand the interpreter assigned at the hearing", I see no reason for disturbing the finding that Petitioner made a knowing and intelligent waiver of his statutory right to counsel.