# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2158

_____

Janet Njanja Njoroge

*Petitioner*

v.

Eric H. Holder, Jr.,
Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: February 13, 2014
Filed: June 3, 2014

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Janet Njanja Njoroge, a citizen of Kenya, petitions for review of an April 2012 order of the Board of Immigration Appeals (BIA), upholding an immigration judge's (IJ's) May 2010 decision. The IJ denied Njoroge's motion for a continuance and denied her requests for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition.

## I. *Background*

In 2002, Njoroge applied for asylum, withholding of removal, and CAT relief, asserting that she feared that she would be subjected against her will to female genital mutilation (FGM). In 2003, the IJ denied asylum and related relief, relying in part on country-condition evidence of a recent partial ban on FGM practices in Kenya. The BIA dismissed Njoroge's appeal of the IJ's decision, and Njoroge petitioned this court for review. While that petition was pending, the Department of Homeland Security (DHS) moved for a remand, asserting that the BIA had not taken into account the effectiveness of the FGM ban in Kenya. In 2005, this court granted DHS's unopposed motion and remanded the case. Thereafter, in 2008, the BIA remanded the case to the IJ, stating that the parties should be allowed to present updated evidence on FGM practices in Kenya, and that the IJ should then determine how effective the FGM ban had been and whether Njoroge "currently" had a well-founded fear of being subjected to FGM if returned to Kenya.

At a February 2009 hearing in Minnesota, Njoroge appeared pro se and informed the IJ that she had moved to North Carolina. The IJ advised the parties that the "final hearing" would be held in Minnesota on May 5, 2010. On April 18, 2010, attorney Japheth Matemu filed a notice of appearance and a motion for a continuance, asserting that Njoroge had recently retained him and that he needed more time to prepare for the upcoming May 5 hearing. On April 30, 2010, the IJ denied the motion without comment. Njoroge then attended the May 5 hearing without Matemu. Njoroge explained to the IJ that Matemu had informed her by telephone the day before that he could not attend the hearing, but he gave her no reason. Njoroge further explained that she had first approached Matemu in April 2010 about representing her and that other attorneys she had consulted were too expensive or were unwilling to represent her. The IJ ruled that the hearing would go forward, and asked Njoroge if she objected to the admission of various exhibits. Njoroge indicated that she did not know how to answer the question because she did not have counsel with her. The IJ asked Njoroge if she had any updated evidence regarding FGM practices in Kenya,

-2-

and Njoroge indicated that she believed her attorney was working on the preparation of such evidence. The IJ admitted into evidence two 2008 United Kingdom Reports on FGM, which DHS had submitted, and the 2009 Country Report on Human Rights Practices in Kenya. DHS noted its discomfort with proceeding without the presence of Njoroge's counsel of record and suggested that the IJ attempt to contact Matemu by telephone. The IJ declined, stating that she had afforded Njoroge 14 months to find an attorney and prepare her case and characterizing Matemu's failure to appear as a delay tactic. Njoroge testified that she feared that both she and her daughter—a citizen of the United States and, at that time, approximately age 9—would be subjected to FGM in Kenya. The IJ denied asylum and related relief. As to Njoroge's asserted fear that her daughter would be subjected to FGM, the IJ stated that Njoroge lacked standing to make such an assertion. Njoroge then appealed to the BIA. In April 2012, the BIA dismissed her appeal, reasoning that the IJ had not erred in denying Njoroge's motion for a continuance, the proceedings had not been fundamentally unfair, and Njoroge had not shown prejudice. Njoroge thereafter timely petitioned this court for review.

## II. *Discussion*

Njoroge raises three arguments on appeal: (1) that the IJ's denial of her motion for a continuance was an abuse of discretion, (2) that she was denied her right to counsel when the May 5 hearing was conducted without the presence of her counsel of record, and (3) that the proceedings were fundamentally unfair. She also notes that she had difficulty finding an affordable attorney who was familiar with FGM cases and willing to take her case. According to Njoroge, her chosen counsel, Matemu, needed more time to review the voluminous record and assemble updated evidence regarding current conditions in Kenya. Njoroge had not previously requested a continuance, and she believes that the IJ was more concerned with expediency than justice. Njoroge also asserts that she was prejudiced and that she established

eligibility for asylum and related relief.[1] DHS responds that the IJ acted within her discretion, both in finding that Njoroge had not established good cause for a continuance and in going forward with the hearing without Njoroge's counsel.

"The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003) (quotation and citation omitted). We review due process challenges de novo. *Zheng v. Holder*, 698 F.3d 710, 714 (8th Cir. 2012).

> It is well-settled that, while there is no Sixth Amendment right to counsel, *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002), aliens have a statutory right to counsel at their own expense, 8 U.S.C. § 1229a(b)(4)(A), and are entitled to the Fifth Amendment's guarantee of due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). In certain circumstances, depriving an alien of the right to counsel may rise to the level of a due process violation. *United States v. Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995).

*Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004).[2]

---

[1] Njoroge incorrectly asserts in her brief that the IJ did not consider the motion for continuance until the day of the hearing and that the BIA "did not discuss the application for political asylum that was in the file."

[2] "[A]liens are free to waive their statutory right to counsel . . . ." *Id*. (citing *Torres-Sanchez*, 68 F.3d at 230 ("An alien may voluntarily waive representation by counsel, however, and that waiver will be respected.")). In the present case, however, DHS has not argued that Njoroge waived her statutory right to counsel. Therefore, we will assume, without deciding, that no waiver has occurred.

Njoroge "argues that the denial of a continuance violated [her] statutory right to counsel. Absent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing." *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 807 (9th Cir. 2007) (quotation and citation omitted). The Ninth Circuit has held that "[w]hen an immigrant has engaged counsel and the IJ is aware of the representation, if counsel fails to appear, the IJ must take *reasonable steps* to ensure that the immigrant's statutory right to counsel is honored." *Id*. at 808 (emphasis added) ("By declining unreasonably to grant even a brief continuance so that Hernandez-Gil could locate and appear with his attorney, whom the IJ had been told was in the building in another courtroom, the IJ denied Hernandez-Gil's statutory right to counsel.").

In the present case, the IJ was aware that Njoroge had counsel, and Njoroge explained to the IJ that counsel had notified her the day before the hearing that he could not attend. DHS indicated its discomfort with proceeding in counsel's absence and requested that the IJ attempt to contact Njoroge's counsel via telephone, but the IJ declined to do so.[3]

---

[3]Specifically, counsel for DHS stated:

> Q. Your Honor, I guess I'm unsure how you're going to proceed down the line at this point. I had a chance to confirm with my office, and I guess one of my concerns with us proceeding too much further here today is that, you know, with the EOIR-28 the respondent's still represented by counsel, and I'm feel [sic] that I'm inhibited from asking her any questions, if she is a represented party, and I would at least ask if maybe the Court could on the record attempt to contact her attorney via telephone and have him withdraw or have him appear telephonically for the purposes of this hearing. But I guess the Government feels constrained at this point by the absence of her counsel, without a way of having him withdraw.

Assuming, without deciding, that the IJ violated Njoroge's statutory right to counsel by not at least calling Njoroge's counsel to see that Njoroge's statutory right to counsel was honored, Njoroge cannot prove prejudice. *See Al Khouri*, 362 F.3d at 466 ("This finding, however, does not end the analysis because '[t]o demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice.'" (citing *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003))); *see also Torres–Sanchez*, 68 F.3d at 230 ("In this circuit, the establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice; an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice." (footnote and citation omitted)).

> "Actual prejudice exists where defects in the deportation proceedings *may well have* resulted in a deportation that would not otherwise have occurred." *Torres–Sanchez*, 68 F.3d at 230 (emphasis added). The Ninth Circuit has similarly defined "prejudice" as an error that "'*potentially . . .* affects the outcome of the proceedings,'" *Agyeman v. INS*, 296 F.3d 871, 884 (9th Cir. 2002) (omission in original) (quoting *Perez–Lastor v. INS*, 208 F.3d 773, 780 (9th Cir. 2000)), and the Seventh Circuit has defined it as an error that "'had the potential for affecting' the outcome of the hearing." *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000) (quoting *Kuciemba v. INS*, 92 F.3d 496, 501 (7th Cir. 1996)).

*Al Khouri*, 362 F.3d at 466.

Here, when the IJ asked Njoroge whether she had "submitted any further country information on FGM in Kenya," Njoroge replied, "I believe that is what my current lawyer was working on." But neither Njoroge nor her counsel has set forth, either before the IJ or on appeal, what evidence affirmatively proves that she is entitled to the relief that she seeks. As a result, she has not proven prejudice.

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____