# United States Court of Appeals
## For the First Circuit

No. 19-1524

ANA RUTH HERNANDEZ LARA,

Petitioner,

v.

WILLIAM P. BARR,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Stahl, and Lipez,
Circuit Judges.

Sang Yeob Kim and Eloa J. Celedon, with whom Harvey Kaplan, Gilles Bissonnette, Henry Klementowicz, the American Civil Liberties Union of New Hampshire, and Celedon Law were on brief, for petitioner.
Deirdre M. Giblin, Iris Gomez, and Massachusetts Law Reform Institute on brief for Massachusetts Law Reform Institute, American Immigration Lawyers Association New England Chapter, Boston College Law School Immigration Clinic, Boston University Immigrants' Rights and Human Trafficking Program, Catholic Charities of the Archdiocese of Boston, Catholic Social Services of Fall River, Central West Justice Center, DeNovo Center for Justice and Healing, Greater Boston Legal Services, Immigrant Legal Advocacy Project, Justice Center of Southeast Massachusetts, MetroWest Legal Services, The Northeast Justice Center, Political Asylum/Immigration Representation Project, and University of Massachusetts Dartmouth Immigration Law Clinic, amici curiae.

Zoe Jaye Heller, with whom Katherine A. Smith, Trial Attorney, U.S. Department of Justice Office of Immigration Litigation, Civil Division, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Kiley Kane, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

June 15, 2020

**LIPEZ**, **Circuit Judge**.  Ana Ruth Hernandez Lara ("Hernandez"), a native and citizen of El Salvador, entered the United States in the fall of 2013 without being admitted or paroled.  She made her way to Portland, Maine, where she was living and working when she was arrested by immigration officers on September 20, 2018, and issued a Notice to Appear.  Following her arrest, Hernandez was detained at the Strafford County Department of Corrections in Dover, New Hampshire ("Strafford County Jail"), where she remained throughout her removal proceedings.

Those proceedings culminated in an evidentiary hearing on the merits of Hernandez's application for relief from removal, during which Hernandez was required to represent herself.  At the end of the hearing, an Immigration Judge ("IJ") denied Hernandez's claims for relief.  With the assistance of her newly retained attorney, Hernandez appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and filed a motion to reopen and remand.  The BIA dismissed Hernandez's appeal, denied her motion, and ordered her removed to El Salvador.

Hernandez petitions for review on multiple grounds, but we need decide only one.  Concluding that the IJ denied Hernandez her statutory right to be represented by the counsel of her choice, we grant the petition, vacate the BIA's decision, and remand for further proceedings consistent with this decision.

Over the course of her removal proceedings, Hernandez retained an attorney, lost that attorney, and attempted to find another to assist her in presenting the merits of her claims. Because Hernandez's efforts to secure counsel, her requests for additional time for that purpose, and the IJ's responses to those requests are at the heart of our analysis, we describe the relevant portion of each removal hearing. We then turn to the factual underpinnings of Hernandez's claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

## A. Removal Hearings

On October 11, 2018, three weeks after her arrest, Hernandez had her initial master calendar hearing.[1] The IJ advised Hernandez of her "right to be represented at no expense to the government by counsel of [her] choice," and Hernandez confirmed that she had received the required list of low-cost legal services providers.[2] The IJ then asked Hernandez whether she wanted an

---

[1] At this hearing and all subsequent hearings, Hernandez required the assistance of a Spanish interpreter.

[2] Regulations require IJs to ensure that individuals in removal proceedings receive a list of pro bono legal services providers. See 8 C.F.R. §§ 1003.61(b), 1240.10(a)(2). The list is maintained by the Executive Office for Immigration Review. Legal services providers must meet a detailed set of requirements to qualify for inclusion. See generally id. §§ 1003.61-63. As the amici note, the list of free legal services does not appear in the administrative record, even though Hernandez confirmed that she had received a copy of it. We note that the current version

opportunity to find an attorney, and Hernandez responded that she had an attorney who was not aware of the hearing. The IJ told Hernandez that her next hearing would take place on October 18 and that she should have her attorney "enter an appearance as soon as possible."

On October 18, Hernandez appeared with her attorney, who entered a limited appearance for the custody and bond proceedings taking place that day. The IJ denied bond based on a Red Notice published by the International Criminal Police Organization ("INTERPOL")[3] that accused Hernandez of being a gang member.[4] The IJ continued the hearing for a week to October 25 -- without objection from the attorney for the Department of Homeland Security ("DHS") -- to allow Hernandez's bond attorney time to decide

---

of the list, which is available online, does not include any lawyers located in New Hampshire, where Hernandez was detained. See EOIR, List of Pro Bono Legal Service Providers (last updated Apr. 2020), https://www.justice.gov/eoir/file/ProBonoMA/download.

[3] An INTERPOL Red Notice is "a request to law enforcement worldwide to locate and provisionally arrest a person pending extradition, surrender, or similar legal action." Red Notices, INTERPOL, https://www.interpol.int/en/How-we-work/Notices/Red-Notices (last visited June 3, 2020). In the United States, an INTERPOL Red Notice alone is not a sufficient basis to arrest the "subject" of the notice "because it does not meet the requirements for arrest under the 4th Amendment to the Constitution." About INTERPOL Washington: Frequently Asked Questions, U.S. Dep't of Justice, https://www.justice.gov/interpol-washington/frequently-asked-questions (last visited June 3, 2020).

[4] Hernandez denies the allegation; she testified at her merits hearing that she has never belonged to a gang.

whether she would continue to represent Hernandez.  The IJ ended the hearing by warning Hernandez that, if she did not have an attorney by her next hearing, she would "have to speak for [her]self and represent [her]self."

Hernandez appeared at her hearing the following week without an attorney.  The IJ began by asking her about the status of her legal representation:

> **IMMIGRATION JUDGE**[5]
> Okay. All right, ma'am, have you been able to find an attorney to help you on your case?
> **HERNANDEZ**
> Yes, I have one.
> **IMMIGRATION JUDGE**
> What's your attorney's name?
> **HERNANDEZ**
> Her name is Laura. She was here. I had a hearing here.
> **IMMIGRATION JUDGE**
> Okay, she was only representing you for your bond request. Have you been able to find someone for your removal proceedings?
> **HERNANDEZ**
> An attorney?
> **IMMIGRATION JUDGE**
> Yes.
> **HERNANDEZ**
> Yes.
> **IMMIGRATION JUDGE**
> Who?
> **HERNANDEZ**
> The same attorney.

---

[5] Throughout this opinion, the headings introducing each person's remarks, quoted from the administrative hearing transcripts, have been shortened for conciseness.

- 6 -

After confirming that the attorney's entry of appearance was limited to the bond hearing and that no other attorney had entered an appearance for the removal proceedings, the IJ informed Hernandez that she would have to "speak for [her]self and represent [her]self" that day.

The IJ proceeded to read Hernandez the allegations in the Notice to Appear. Following the reading, Hernandez admitted that she is not a United States citizen, that she is a native and citizen of El Salvador, and that she entered the United States without being admitted or paroled. The IJ therefore found Hernandez removable as charged under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for entering the United States without inspection. The subject of the hearing then shifted to relief from removal. In response to questions from the IJ, Hernandez testified that she was afraid of "[t]he gang" in El Salvador. The IJ determined that she might be eligible for withholding of removal or CAT relief -- he noted that "asylum is one-year barred"[6] -- and instructed that Hernandez receive a Form I-589, the application for relief from removal.[7] He told Hernandez that her next hearing

_____

[6] Subject to a few limited exceptions, an asylum applicant must generally file her claim within one year of entering the United States. See 8 U.S.C. § 1158(a)(2)(B).

[7] The I-589 is the application for asylum, withholding of removal, and CAT relief. Even though the one-year filing bar

- 7 -

would be in eight days, on November 2, and that she must "fill out the application completely in English" before then.  He also told her that, if she found a lawyer before the hearing, she should tell the lawyer to enter an appearance as soon as possible.

On Friday, November 2, Hernandez again appeared without counsel.  When the IJ inquired about the status of Hernandez's legal representation, she asked for time to find a new lawyer:

> [T]he attorney that represented me on my first - on my first hearing, she called me and asked me if she was going to continue to represent me. I said yes, and then she just called me this past Monday telling me that she couldn't represent me anymore. So we've been calling to other attorneys. They say that they cannot take my case from one day to another, so they asked me to ask the judge if they could give me another day for them to review my file to see if they can take my case.

Without asking any further questions about Hernandez's efforts to find a new lawyer or acknowledging her request for more time, the IJ told Hernandez that she would "have to speak for [her]self and represent [her]self."  The IJ then questioned Hernandez about her application for relief from removal:

> **IMMIGRATION JUDGE**
> All right, about a week ago I gave you an application for asylum and asylum-like relief to file today. Do you have that application today?

---

precluded Hernandez from applying for asylum (absent a showing that she qualified for an exception) the IJ referred to her application for relief from removal as her "asylum application" throughout the proceedings, presumably for the sake of simplicity.

**HERNANDEZ**

Well, I do have the application, but I haven't been able to file it because I asked somebody if they could help me to file it, and they said no because it was too complicated. And then I thought that my attorney was going to file it for me, but then she said she couldn't take my case. So I have it, but it's not filled out.

**IMMIGRATION JUDGE**

Do you still want to apply for asylum?

**HERNANDEZ**

Yes.

**IMMIGRATION JUDGE**

Then why didn't you fill out the application pursuant to my instructions?

**HERNANDEZ**

Well, the problem is that I can't write in English and I can't read it, so I couldn't fill it out.

To give Hernandez more time to fill out the application, the IJ set another hearing for November 8. He instructed Hernandez to "fill out th[e] application completely in English, consistent with [his] orders," and told her that if she failed to file her application on the morning of the next hearing, he might "deem [her] application . . . abandoned."

The following Thursday, November 8, Hernandez appeared in immigration court for the fourth time, again without a lawyer. When the IJ asked Hernandez whether she had been able to find an attorney, Hernandez responded that her bond attorney had called her two days earlier to get her permission to turn over her case file to a new attorney. Hernandez told the IJ that she expected the new attorney to visit her at the Strafford County Jail either

- 9 -

that day or the following day. The IJ told Hernandez that she would have to "speak for [her]self and represent [her]self" because she was "only consulting with an attorney" and no lawyer had entered an appearance.

The IJ then turned to the matter of Hernandez's application for relief from removal, asking whether she had filled out the form, as he had instructed her to do. Hernandez explained that someone at the jail had helped her fill out two pages of the paperwork and she gave the completed pages to the IJ. But the person who helped Hernandez had completed the wrong pages.

> **IMMIGRATION JUDGE**
> All right, ma'am. I don't see your asylum application in here. I do note that at the last hearing, I personally gave you the asylum application. Why don't I have it today?
> **HERNANDEZ**
> The girl who filled out the two papers, she told me that was for asylum.
> **IMMIGRATION JUDGE**
> You have to listen to my instructions. Do you understand me?
> **HERNANDEZ**
> Yes.
> **IMMIGRATION JUDGE**
> I have a statement from you. Does this relate to your fear of return?
> **HERNANDEZ**
> Yes. I told her.

The IJ gave Hernandez another copy of the I-589 and told her that he was going to schedule a final hearing for November 16, at which time she would be expected to provide the completed application, as well as testimony and evidence. The attorney for DHS objected

- 10 -

to the continuance and asked the IJ to consider Hernandez's application for relief from removal abandoned. The IJ declined to do so; instead, he described to Hernandez the kinds of evidence she might want to present at her final merits hearing.[8]

The next day, the new lawyer Hernandez had told the IJ about visited Hernandez and agreed to represent her. But the attorney did not accompany Hernandez to the November 16 hearing because she was still waiting for Hernandez's bond attorney to turn over her file. At the beginning of the hearing, after submitting the completed I-589, Hernandez asked the IJ for a continuance to allow her new attorney to be present. The DHS attorney stated that the agency would agree to the continuance "if the next date was for the hearing and not for attorney prep," but also remarked that such a purpose would be difficult to guarantee. The IJ agreed with the latter observation, denied Hernandez's request for a continuance, and told Hernandez that she would have to "speak for [her]self and represent [her]self" once again. In his oral order, the IJ explained that "[t]he respondent has been given over five weeks to find an attorney of her choice, [and] especially where the respondent is detained the court finds the

---

[8] The IJ told Hernandez that she should be prepared to present witnesses, plus documents "such as police reports, conviction records, restraining orders, country conditions evidence, school records, medical records, property records, or any statements or affidavits from any family, friends, relatives or any other person who knows why you fear return to El Salvador."

respondent has failed to show any good cause to continue this matter any further."[9]  The IJ proceeded to conduct Hernandez's merits hearing on her application for withholding of removal and CAT relief.

**B. Hernandez's Claims for Relief from Removal**

Responding to questions by the IJ, Hernandez testified that she was afraid to go back to El Salvador because she had been threatened by the 18th Street Gang.  She explained that her brother was recruited to join the 18th Street Gang when he was thirteen years old and that he worked for the gang until he was arrested and sent to prison at age eighteen.  With her brother no longer available, the gang pressured Hernandez to take over the work he had been doing.  She refused, angering the gang.  Hernandez went to her brother in prison and told him that gang members had been insisting that she work for them.  When Hernandez's brother tried to intervene on her behalf, gang members beat him.

Gang members also went to Hernandez's aunt's house and told her that, if Hernandez did not do what the gang asked, her

_____

[9] The Executive Office for Immigration Review (EOIR) issues administrative guidance regarding the agency's priorities and goals for the adjudication of immigration court cases. EOIR, "Case Priorities and Immigration Court Performance Measures," at 1 (Jan. 17, 2018), available at https://www.justice.gov/eoir/page/file/1026721/download.  "EOIR has always designated detained cases as priorities for completion" and thus immigration judges are expected to complete cases involving detained individuals "expeditiously and without undue delay." Id. at 2.

aunt would "find [Hernandez's] head in a river or a mountain." The IJ asked whether this was something that happened only to Hernandez and her family or whether it happened "across [her] neighborhood." Hernandez responded: "It was just my family. And it all happened because my brother joined the gang because once one family member joins the gang then they want the whole family to be involved." Hernandez testified that she did not report the threats to the police because she knew that, if she did, the gang members "were going to find out because they always find out when you accuse them. And if they find out that's when they send someone and that's when you get killed."

Hernandez also testified that she had suffered physical abuse at the hands of her ex-partner, with whom she has two children, but that she does not fear that he would harm her if she returned to El Salvador. She was able to leave him after the police arrested him and put a restraining order in place, and they had lived apart for seven years before she left the country. The IJ asked Hernandez why she believed that the police or the government could not protect her from the gangs in El Salvador when the police had protected her from her ex-partner. Hernandez responded that "it's different with the gangs" because "over there they're afraid of the gangs."

At the conclusion of the hearing, the IJ delivered an oral decision. As an initial matter, the IJ determined that

Hernandez was ineligible for asylum because she had neither filed her application within one year of entering the United States nor demonstrated circumstances that would qualify her for an exception to the one-year bar. In the alternative, even assuming that Hernandez's application was timely, the IJ found that she had not met the requirements for asylum and thus did not meet the stricter standards for withholding of removal and CAT relief. Specifically, although the IJ found Hernandez credible, he concluded that she failed to demonstrate that her familial connection to her brother was "one central reason" that the gang singled her out and that, instead, the gang targeted Hernandez because they wanted to increase their ranks. In reaching that conclusion, the IJ erroneously found that Hernandez had testified "that her neighbors and others were often recruited for . . . similar reasons," when in fact her testimony was that only her family was targeted. The IJ also concluded that the police would have protected Hernandez from the gang if she had reported the threats because the police had protected her from her ex-partner in the past.

## C. Appeal to the BIA

With the assistance of her new lawyer, Hernandez timely appealed the IJ's decision to the BIA. She also filed a motion to reopen and remand to the immigration court for a new hearing to pursue her claims with the assistance of her lawyer. Hernandez argued that the IJ erred by denying her final request for a

- 14 -

continuance.  She relied on In re C-B-, 25 I. & N. Dec. 888 (BIA 2012), the leading BIA decision on the statutory right to counsel, and cited the right-to-counsel statute, INA § 292, 8 U.S.C. § 1362. She also pointed to factors that bear upon whether an individual has been given adequate time to find counsel, including detention status and English proficiency.[10]

The BIA affirmed the IJ's denial of Hernandez's request for a continuance, explaining that Hernandez "did not demonstrate 'good cause' for a continuance," nor "prejudice or a due process violation."  As to "good cause," the BIA explained that "[t]he Immigration Judge declined to grant [Hernandez's] motion for continuance after considering that he had already granted her five continuances to afford her time to obtain counsel and to complete her asylum application."  The BIA further noted that "[o]n the day of [Hernandez's] merits hearing, [Hernandez] stated she had an attorney, but she did not submit an entry of appearance form for this attorney."  The BIA concluded that Hernandez "did not make a

---

[10] After oral argument, the government filed a letter under Federal Rule of Appellate Procedure 28(j) attempting to raise for the first time an argument that we lack jurisdiction because Hernandez failed to exhaust her right to counsel claim before the BIA.  Rule 28(j) enables a party to apprise the court of "pertinent and significant" legal authority that comes to its attention "after oral argument but before decision," Fed. R. App. P. 28(j), not to introduce new arguments that the party failed to raise in its brief, see Ruskai v. Pistole, 775 F.3d 61, 66-67 (1st Cir. 2014). In any event, the government's argument is meritless.  It is clear that Hernandez raised the right to counsel issue before the BIA.

persuasive showing of good cause for her requested continuance considering the number of continuances she received for th[e] express purpose" of "obtain[ing] counsel."  As to the prejudice analysis, the BIA found that Hernandez

> was provided a reasonable opportunity to present testimony, documents and arguments in support of her applications for relief and protection, and there is no indication that the Immigration Judge's actions amount to a violation of due process.  Moreover, the facts [Hernandez] alleges on appeal with the assistance of counsel pertaining to her claims are essentially the same as those she testified to before the Immigration Judge pro se.   Additionally, . . . based on [Hernandez's] testimony and other evidence in the record, [Hernandez] has not met her burden to establish her eligibility for the relief requested and thus, she is unable to demonstrate prejudice.

(internal citations omitted).

Hernandez also challenged the IJ's denial of her claims for relief from removal.  The BIA affirmed the IJ's determination that Hernandez's asylum application was untimely, as well as his alternative findings that Hernandez failed to prove both that the government of El Salvador is unable or unwilling to protect her and that her membership in a particular social group was one central reason for her alleged persecution.[11]  Hernandez timely filed a petition for review of the BIA's decision.

_____

[11] Though the BIA recognized that the IJ's factual finding that Hernandez's neighbors were also targeted by the gang was erroneous, it concluded that the error was harmless.

Federal law guarantees individuals in removal proceedings the right to be represented by the counsel of their choice at no cost to the government. 8 U.S.C. §§ 1362, 1229a(b)(4)(A). Hernandez argues that the IJ violated her statutory right to counsel by denying her request for a continuance and requiring her to represent herself.

## A. Standard of Review

We ordinarily review an IJ's denial of a continuance for abuse of discretion. See, e.g., Alsamhouri v. Gonzales, 484 F.3d 117, 122 (1st Cir. 2007). But a request for a continuance to permit the respondent to secure her statutory right to counsel is not the ordinary continuance request. Indeed, the BIA recognizes this distinction.

Regulations provide generally that an IJ may grant a respondent's request to continue a hearing "for good cause shown." 8 C.F.R. §§ 1003.29, 1240.6. The BIA applies this "good cause" standard when evaluating IJs' denials of continuances in many circumstances. See, e.g., In re Villarreal-Zuniga, 23 I. & N. Dec. 886, 887, 891-92 (BIA 2006) (respondent sought continuance to apply for adjustment of status, i.e., collateral relief). But the BIA has applied a different standard to determine whether the continuance that a respondent seeks is necessary to ensure that she is not deprived of the right to retain counsel, to which she

- 17 -

is entitled by statute. Indeed, the BIA has held that, absent an express waiver of the right to counsel, the IJ "must grant a reasonable and realistic period of time to provide a fair opportunity for a respondent to seek, speak with, and retain counsel." In re C-B-, 25 I. & N. Dec. at 889 (emphasis added). Applying that standard in In re C-B-, moreover, the BIA found that the IJ's denial of a continuance to allow the respondent to retain counsel resulted in a denial of the respondent's statutory right to counsel, sustained the appeal, and remanded for further proceedings. Id. at 890, 892. Nor does the government dispute that a respondent will have been deprived of the statutory right to counsel if she is denied the time and opportunity to retain an attorney that In re C-B- requires.

In this case, however, the BIA used the "good cause" standard, instead of the standard from In re C-B-, to evaluate whether Hernandez was entitled to the continuance at issue. Notably, none of the cases that the BIA cited in applying that standard involved requests for continuances to seek counsel. See In re L-A-B-R, 27 I. & N. Dec. 405, 406 (U.S. Att'y Gen. 2018) (continuances in consolidated cases sought to pursue collateral relief); In re Villarreal-Zuniga, 23 I. & N. Dec. at 887 (continuance sought to pursue collateral relief); In re Perez-Andrade, 19 I. & N. Dec. 433, 434 (BIA 1987) (continuance sought by counsel when respondents did not appear for scheduled hearing);

- 18 -

In re Sibrun, 18 I. & N. Dec. 354, 355-56 (BIA 1983) (continuance sought by counsel to allow more time to gather and present evidence).

The BIA's decision is far from clear in explaining the reasons that the BIA did not apply the In re C-B- standard to assess Hernandez's last continuance request.  But, regardless, we must still decide whether the IJ's denial of Hernandez's last request for a continuance to find a lawyer, given this record, resulted in a denial of her statutory right to counsel.  We are bound, as is the BIA, to apply that statutory requirement.  Thus, we must ask, even though the BIA did not, whether the IJ afforded Hernandez "a reasonable and realistic period of time to provide a fair opportunity" for her to secure counsel.  See In re C-B-, 25 I. & N. Dec. at 889.

The statutory right to counsel is a fundamental procedural protection worthy of particular vigilance.  In what we think is a useful analogy, we have determined that a due process claim in the immigration context presents a legal question subject to de novo review.  See Toribio-Chavez v. Holder, 611 F.3d 57, 62 (1st Cir. 2010).  We likewise conclude that Hernandez's claim that she was denied her statutory right to counsel presents a legal question warranting plenary review.  Accord Montes-Lopez v. Holder, 694 F.3d 1085, 1088 (9th Cir. 2012) ("[W]hether the IJ's denial of a continuance violated Petitioner's statutory right to

counsel . . . is a question of law which we review de novo.");[12]

see also David Hausman & Jayashri Srikantiah, Time, Due Process,

and Representation: An Empirical and Legal Analysis of

Continuances in Immigration Court, 84 Fordham L. Rev. 1823, 1842

(2016) (arguing that "the denial of a continuance to seek

representation should be reviewed de novo"); cf. Leslie v. Attorney

Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010) (reviewing de novo

whether IJ's failure to comply with a regulation was grounds for

a new removal hearing).

## B. Analysis

### 1. Denial of the Right to Counsel

The government asserts that the IJ granted Hernandez

"five continuances" that spanned "over a month" for the sole

purpose of allowing her to obtain counsel.  This description of

the relevant time period is inaccurate.  The record reveals that

Hernandez had only fourteen business days to find a lawyer after

---

[12] Two courts have treated denials of continuances implicating the right to counsel in immigration cases as ordinary continuance cases, without considering whether a different standard is warranted.  Mendoza-Garcia v. Barr, 918 F.3d 498, 505 (6th Cir. 2019) (reviewing denial of continuance that implicated right to counsel for abuse of discretion); Castaneda-Delgado v. INS, 525 F.2d 1295, 1300 (7th Cir. 1975) (same).  Another court employed abuse of discretion review because the petitioner's counsel "stated at oral argument that in order for [the petitioner's] right to counsel to have been violated, the immigration judge must have abused his discretion by denying the continuance request." Ponce-Leiva v. Ashcroft, 331 F.3d 369, 375 (3d Cir. 2003) (emphasis omitted).

she understood that she needed a new one. Hernandez's original attorney had entered a limited appearance for the custody and bond proceedings, which are "separate and apart from" removal proceedings, 8 C.F.R. § 1003.19(d), and the IJ found no indication, at the October 25 hearing, that the bond attorney had ever intended to continue representing Hernandez after the bond hearing. Thus, with respect to the removal proceedings, Hernandez had not actually had "the privilege of being represented . . . by such counsel, authorized to practice in such proceedings, as [s]he shall choose," 8 U.S.C. § 1362; see also id. § 1229a(b)(4)(A), at the point at which she sought the continuance at issue here. Until October 29, Hernandez had the mistaken belief that her bond attorney continued to represent her. Therefore, the relevant period is only the time between October 29 and Hernandez's merits hearing on November 16. See Mendoza-Garcia v. Barr, 918 F.3d 498, 506 (6th Cir. 2019) (holding that the "reasonable and realistic period" of time for petitioner to find an attorney commenced "after he knew that his retained counsel would no longer be representing him"). Additionally, the continuances granted on November 2 and November 8, as the IJ made clear, were for the purpose of allowing Hernandez time to fill out the asylum application and gather evidence for her merits hearing and not to secure a lawyer to represent her. Thus, while she attempted to secure a lawyer during

that time, Hernandez also had to struggle on her own with the paperwork required to pursue her claims for relief.

Importantly, Hernandez was detained throughout her removal proceedings. Unsurprisingly, data shows that detention significantly decreases the ability of respondents in immigration proceedings to obtain counsel. See Ingrid V. Eagly & Steven Shafer, A National Study of Access to Counsel in Immigration Court, 164 U. Pa. L. Rev. 1, 32 (2015) (concluding that, nationally, people in removal proceedings who are not detained are nearly five times more likely to obtain counsel than those who are detained). Detainees' access to phone calls and visits is generally limited, which hampers their ability to contact and meet with prospective lawyers.[13] See Michael Kaufman, Detention, Due Process, and the Right to Counsel in Removal Proceedings, 4 Stan. J. C.R. & C.L. 113, 127 (2008).

In addition to the constraints imposed by detention, Hernandez does not speak, read, or write English. A language

_____

[13] The detention of immigrants seeking relief from removal creates a tension between the administrative guidance applicable to detained immigrants and the statutory right to counsel. As noted, EOIR requires IJs to process cases where the respondent is detained "expeditiously." EOIR, "Case Priorities and Immigration Court Performance Measures," supra, note 9, at 2. But those are the very same individuals who will find it more difficult to obtain counsel -- a privilege guaranteed to them under federal law, see 8 U.S.C. §§ 1362, 1229a(b)(4)(A) -- and thus will likely require more time to do so.

barrier is apt to further complicate the process of contacting prospective attorneys. See Castaneda-Delgado v. INS, 525 F.2d 1295, 1299 (7th Cir. 1975) (considering inability to speak English among circumstances that would lead to "difficulty in obtaining an attorney").

Despite the challenges she faced, the hearing transcripts reveal that Hernandez wanted the help of a lawyer and diligently sought representation. On Friday, November 2, Hernandez told the IJ that she had been making calls to attorneys since discovering on Monday of that week (October 29) that her bond attorney would no longer represent her. By the next hearing, on November 8, Hernandez had given her bond attorney permission to give her "documents" to a new attorney, who planned to visit her either that day or the next day. A week later, by the time of the November 16 merits hearing, Hernandez had retained the new lawyer. Her success within this timeframe reflects as much diligence as could reasonably be expected in her circumstances. The IJ did not conclude otherwise. He did not suggest that Hernandez was acting in bad faith or attempting to game the system by asking for more time to find a lawyer, and nothing in the record indicates such motivation.

For the IJ on the day of Hernandez's merits hearing -- the most critical stage of the proceeding -- to cut off Hernandez's access to an attorney whom she had just retained after much effort

makes no sense.  Although the IJ reasoned that Hernandez "ha[d] been given over five weeks to find an attorney of her choice," that characterization, as we have explained, is inaccurate, given Hernandez's mistaken understanding of the scope of her bond attorney's representation.  But even if we accept the relevance of that five-week time frame, there was no justification for the IJ's denial of an additional continuance to allow the attorney now representing Hernandez to be present at a rescheduled merits hearing when she had used those five weeks to do exactly what the IJ said she should have been doing -- obtain an attorney. Moreover, the government did not object to Hernandez's final request for a continuance.  Accordingly, we readily conclude that the IJ, by denying this request, failed to "meaningfully effectuate" the statutory right to counsel.  See In re C-B-, 25 I. & N. Dec. at 889.

### 2.  Prejudice

We have not decided in this circuit whether a petitioner who was improperly denied counsel in immigration proceedings must demonstrate that the denial resulted in prejudice.  Other circuits are split on the issue.[14]  The majority approach does not require

---

[14] Five circuits do not require a showing of prejudice, while four do.  Compare Montes-Lopez, 694 F.3d at 1093-94 (showing of prejudice not required); Leslie, 611 F.3d at 182 (same); Montilla v. INS, 926 F.2d 162, 169 (2d Cir. 1991) (same); Castaneda-Delgado, 525 F.2d at 1302 (same); and Cheung v. INS, 418 F.2d 460, 464-65 (D.C. Cir. 1969) (same), with Njoroge v. Holder, 753 F.3d 809, 812

a showing of prejudice, reasoning that a denial of counsel so fundamentally affects a proceeding that prejudice may be assumed. See, e.g., Montes-Lopez, 694 F.3d at 1092 ("[D]enial of counsel more fundamentally affects the whole of a proceeding than ineffective assistance of counsel."); Castaneda-Delgado, 525 F.2d at 1302 ("The deportation proceedings . . . were tainted from their roots.  We refuse to indulge in nice calculations as to the amount of prejudice flowing from the denial [of counsel], or to apply a harmless error test." (internal quotation marks omitted)).  And In re C-B- indicates that for a denial of the statutory right to counsel, as opposed to the denial of a continuance unrelated to the statutory right to counsel, a petitioner may not need to show prejudice.  In any event, insofar as there is a requirement to show prejudice, the record inescapably shows that Hernandez was prejudiced by the denial of her statutory right to counsel.

When faced with a constitutional due process claim in the immigration context, we ask whether the procedure at issue "is likely to have affected the outcome of the proceedings" as a condition of relief.  Pulisir v. Mukasey, 524 F.3d 302, 311 (1st Cir. 2008).  Neither the BIA opinion nor the government, in its briefing to us, indicates that the prejudice showing for the

_____

(8th Cir. 2014) (showing of prejudice required); Ogbemudia v. INS, 988 F.2d 595, 598 (5th Cir. 1993) (same); Farrokhi v. INS, 900 F.2d 697, 702 (4th Cir. 1990) (same); and Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990) (same).

violation of the statutory right to counsel differs from the prejudice showing in the context of a due process violation. Thus, while we are not conducting a constitutional due process analysis, we proceed under that framework and consider whether the IJ's denial of Hernandez's statutory right to counsel likely affected the outcome of the proceedings. That prejudice inquiry necessarily requires speculation about what would have happened if counsel had been present. Here, there are critical points in the proceeding where the assistance of an attorney likely would have changed the outcome.

In Hernandez's appeal to the BIA with the assistance of counsel, she argued that the INTERPOL Red Notice identifying her as a gang member constitutes "changed circumstances" under 8 C.F.R. § 1208.4(a)(4)(i) that exempt her from the one-year filing bar for asylum. Relying on the State Department's 2017 Human Rights Report for El Salvador, Hernandez asserted that the unfounded allegation that she is a gang member would subject her to persecution by the El Salvadoran government because the police target suspected gang members for arrest, detention, and extrajudicial killings. The BIA suggested that Hernandez had waived the argument because she failed to raise it before the IJ and, in the alternative, summarily concluded that Hernandez "has not shown that the issuance of an arrest warrant to investigate gang-related activity, which [she] is charged with, constitutes changed circumstances that materially

- 26 -

affect her eligibility for asylum." That Hernandez raised this argument before the BIA when she was represented, but did not do so before the IJ when proceeding pro se, highlights the difference that the assistance of a lawyer can make.

Also, a lawyer likely would have corrected the IJ's erroneous factual finding in his oral ruling that contributed to his adverse nexus determination. As the BIA recognized, "the Immigration Judge clearly erred in finding that [Hernandez] testified that her 'neighbors and others were often recruited [by the gang] for similar reasons.'" In fact, she testified that it was "just [her] family" that had been threatened and that it happened because her "brother joined the gang" and "once one family member joins the gang then they want the whole family to be involved." Though an attorney would object to that kind of error in an oral decision, Hernandez understandably did not do so. A litigant proceeding pro se may not know that she may object, or may be intimidated by the prospect of challenging a judge.

That the BIA affirmed the IJ's nexus finding despite recognizing the IJ's factual error does not affect our assessment of whether an attorney likely would have changed the outcome in the proceedings before the IJ. The BIA reviews findings of fact by an IJ for clear error. 8 C.F.R. § 1003.1(d)(3)(i). Here, the BIA "discern[ed] no clear error" in the IJ's nexus finding because it concluded that there was "insufficient evidence" in the record

to show that Hernandez's relationship to her brother was "at least one central reason" the gang targeted her. But the record in this case was undeveloped precisely because Hernandez lacked counsel. Hernandez testified only when responding to questions from the IJ, and the IJ asked only three questions specifically related to nexus. An attorney certainly would have focused more attention on this crucial part of Hernandez's claim. We easily see a likelihood that the IJ could have reached a different conclusion on nexus based on a different, fully developed record.

Finally, a lawyer would have marshaled the existing evidence and adduced additional evidence to support Hernandez's testimony that the government of El Salvador would not protect her from the gang. Hernandez testified that, even though she had been protected from her abusive ex-partner, "it's different with the gangs" because the police are afraid of them. On appeal, with the assistance of counsel, Hernandez highlighted the fact that portions of the State Department's 2017 Human Rights Report are consistent with her testimony. If Hernandez had been represented at her merits hearing, her attorney likely would have drawn that important connection, adduced other country condition evidence to support Hernandez's testimony and, as Hernandez argues, elicited more detailed testimony about the reasons Hernandez believes the El Salvadoran government would not be able to protect her.

In short, in light of this prejudice analysis, we conclude that the assistance of a lawyer likely would have affected the outcome of Hernandez's removal proceedings. We therefore grant the petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this decision.

So ordered.

**- Concurring Opinion Follows -**

LIPEZ, **Circuit Judge, concurring.** As the panel opinion notes, the circuits are split on the question of whether a petitioner must show prejudice to prevail on a claim that her statutory right to counsel was denied. The five circuits in the majority recognize that representation by counsel in immigration proceedings is a statutory right of such significance that a denial of the right requires no showing of prejudice. By contrast, the four circuits in the minority treat a denial of the statutory right to counsel as one type of Fifth Amendment due process violation, which typically requires a showing of prejudice. I write separately to explain my view that we should join the majority of circuits by holding that a showing of prejudice is not required to succeed on a claim asserting a denial of the statutory right to counsel.

Courts have long recognized that a "denial of the Sixth Amendment right to counsel is so inherently prejudicial that there is no room for the harmless error doctrine." Castaneda-Delgado v. INS, 525 F.2d 1295, 1300 (7th Cir. 1975); see also Cheung v. INS, 418 F.2d 460, 464 (D.C. Cir. 1969). Whereas "[a] criminal defendant who alleges ineffective assistance of counsel must generally show prejudice," a defendant who was denied access to counsel need not because a "denial of counsel more fundamentally affects the whole of a proceeding than ineffective assistance of counsel." Montes-Lopez v. Holder, 694 F.3d 1085, 1092 (9th Cir.

2012); see also Castaneda-Delgado, 525 F.2d at 1301 ("When no lawyer appears to represent the defendant, and his request for legal representation is wholly denied, the proceedings are tainted from their roots, and there is no room for 'nice calculations as to the amount of prejudice' flowing from the denial." (quoting United States v. Robinson, 502 F.2d 894, 896 (7th Cir. 1974))).

Although there is no Sixth Amendment right to counsel in immigration proceedings, Avelar Gonzalez v. Whitaker, 908 F.3d 820, 828 (1st Cir. 2018), removal hearings, like criminal trials, are "fraught with serious consequences." Castaneda-Delgado, 525 F.2d at 1301; see also Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 181 (3d Cir. 2010) ("The right to counsel is a particularly important procedural safeguard because of the grave consequences of removal."). Thus, the rationales that support the conclusion that a criminal defendant who has been denied counsel need not show prejudice are no less true in the immigration context. See Montes-Lopez, 694 F.3d at 1092-93; Castaneda-Delgado, 525 F.2d at 1302; Cheung, 418 F.2d at 464.[15] Indeed, requiring a showing of

---

[15] The Second Circuit and Third Circuit take a different approach to reach the no-prejudice rule, relying upon the principle of administrative law that an agency's noncompliance with its own regulations can be "so serious as to be reversible error without a showing of prejudice." Leslie, 611 F.3d at 178-79 (discussing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954)) (also discussing Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532 (1970), for contrary proposition); see also Montilla v. INS, 926 F.2d 162, 168-69 (2d Cir. 1991) (same).

prejudice when a respondent has been denied access to counsel runs counter to the basic notion that the assistance of counsel in adversary proceedings is essential. See United States v. Cronic, 466 U.S. 648, 659 (1984).

As the Ninth Circuit observed, and as this case illustrates, "the absence of counsel can change [a respondent's] strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the [respondent] is able to include in the record." Montes-Lopez, 694 F.3d at 1092. In immigration proceedings, just as in criminal proceedings, prejudice from a denial of counsel is so likely "that case-by-case inquiry into prejudice is not worth the cost." Strickland v. Washington, 466 U.S. 668, 692 (1984); accord Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The circuits that do require a showing of prejudice provide no compelling explanation for their position. Indeed, the decisions of those circuits do not engage with the principles of law underlying the majority view that a showing of prejudice should not be necessary in the right-to-counsel context. Instead, they examine alleged violations of the right to counsel more generically as a matter of procedural due process, thereby failing to recognize the distinctive nature of the statutory right to counsel, with its Sixth Amendment antecedents. See Njoroge v. Holder, 753 F.3d 809, 811 (8th Cir. 2014) ("In certain circumstances, depriving an alien

of the right to counsel may rise to the level of a [Fifth Amendment] due process violation." (quoting Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004)); see also Ogbemudia v. INS, 988 F.2d 595, 598 (5th Cir. 1993); Farrokhi v. INS, 900 F.2d 697, 701-02 (4th Cir. 1990); Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990).

Importantly, the BIA itself does not require a showing of prejudice when there is a denial of the statutory right to counsel. In In re C-B-, 25 I. & N. Dec. 888 (BIA 2012), the right-to-counsel continuance case discussed in the panel opinion, the BIA sustained the respondent's appeal based on a denial of the statutory right to counsel without a prejudice finding, id. at 890, 892. Yet, inexplicably, the BIA's decision on Hernandez's appeal in this case relies on In re Villarreal-Zuniga, 23 I. & N. Dec. 886 (BIA 2006), for the proposition that "[a] decision to deny a motion for continuance will not be reversed unless the [respondent] establishes that the denial caused her actual prejudice and harm, and materially affected the outcome of her case." In my view, this insistence on a prejudice showing when the statutory right to counsel was at stake was another legal error by the BIA.

Given the fundamental importance of the statutory right to counsel in immigration proceedings, and given the absence of any requirement to show prejudice by the BIA in its own statutory

right to counsel case law, I see no reason to defer a decision to join the majority of circuits in concluding that no showing of prejudice is required when a petitioner establishes a denial of the statutory right to counsel.